In the Matter of DONALD D. VOORHEES, Appellant, against SPENCER E. BATES et al., Constituting the State Tax Commission, Respondents.

Argued November 17, 1954; decided December 31, 1954.

*Paul D. O'Brien* and *Arthur F. Driscoll* for appellant. I. The statute not the State Tax Commission must determine the tax. (*Matter of Good Humor Corp.* v. *McGoldrick*, 289 N. Y. 452;

*Matter of Brooklyn Union Gas Co.* v. *McGoldrick,* 270 App. Div. 186; *Howitt* v. *Street & Smith Publications,* 276 N. Y. 345; *Matter of United Parcel Service* v. *Joseph,* 272 App. Div. 194, 297 N. Y. 1004; *Matter of Holmes Elec. Protective Co.* v. *McGoldrick,* 262 App. Div. 514; *Dun & Bradstreet* v. *City of New York,* 276 N. Y. 198; *Matter of Vassar,* 127 N. Y. 1; *Saltser & Weinsier* v. *McGoldrick,* 295 N. Y. 499; *People ex rel. New York Mail & Newspaper Transp. Co.* v. *Gaus,* 198 N. Y. 250.) II. Petitioner is not a taxpayer under the provisions of article 16-A. (*Matter of Geiffert* v. *Mealey,* 293 N. Y. 583; *Matter of Teague* v. *Graves,* 261 App. Div. 652; *United States* v. *Laws,* 163 U. S. 258; *United States* v. *Commissioner of Immigration,* 298 F. 449; *Matter of Palmer* v. *Spaulding,* 299 N. Y. 368.) III. Petitioner is a member of a recognized group of practitioners objectively identified by fixed qualifications and disciplined by established principles attainable by diligent study known as conductors or musical directors of symphony orchestras. (*Matter of Delpriore* v. *Ball,* 281 App. Div. 214, 306 N. Y. 775.) IV. In addition to practicing a profession, petitioner is also an employee and on this ground not properly taxable. (*Matter of Velie* [*Collins Corp.-Murphy*], 267 App. Div. 1022; *Matter of Morton,* 284 N. Y. 167.) V. The power to tax is a question of law, not one of fact. (*Matter of Delpriore* v. *Ball,* 281 App. Div. 214; *Matter of Calder* v. *Graves,* 261 App. Div. 90, 286 N. Y. 643.)

*Eugene Victor* for American Federation of Musicians, Local 802, A. F. of L., *amicus curiæ,* in support of appellant's position. The authorities uniformly hold that he who exercises control over musicians or reserves the power to do is the employer of the musicians. (*Bartels* v. *Birmingham,* 332 U. S. 126; *Matter of Roseland Amusement Co.* [*Corsi*], 295 N. Y. 913; *Matter of Camgros,* 290 N. Y. 838; *Matter of Hotels Statler Co.* [*Corsi*], 279 App. Div. 814.)

*Nathaniel L. Goldstein, Attorney-General* (*Lawrence H. Wagner, Wendell P. Brown, John C. Crary, Jr.,* and *Robert W. Bush* of counsel), for respondents. I. Petitioner was an independent contractor. (*Matter of Morton,* 284 N. Y. 167; *Matter of Sullivan Co.,* 289 N. Y. 110; *Irwin* v. *Klein,* 271 N. Y. 477; *Matter of Fidel Assn. of N. Y.,* 259 App. Div. 486, 287 N. Y.

626; *People ex rel. Wittich* v. *Browne,* 270 App. Div. 774, 296 N. Y. 720; *People ex rel. Luther* v. *State Tax Comm.,* 265 App. Div. 976, 291 N. Y. 691; *Matter of Connell* v. *State Tax Comm.,* 267 App. Div. 923, 293 N. Y. 934; *People ex rel. Feinberg* v. *Chapman,* 274 App. Div. 715; *Matter of Trowbridge,* 266 N. Y. 283; *Matter of Stork Restaurant* v. *Boland,* 282 N. Y. 256; *People ex rel. Kohlman & Co.* v. *Law,* 239 N. Y. 346; *Matter of Calder* v. *Graves,* 261 App. Div. 90, 286 N. Y. 643; *People ex rel. Hull* v. *Graves,* 289 N. Y. 173; *People ex rel. Freeborn & Co.* v. *Graves,* 257 App. Div. 587.) II. Petitioner's activities did not constitute the practice of a profession. (*People ex rel. Tower* v. *State Tax Comm.,* 282 N. Y. 407; *Matter of Geiffert* v. *Mealey,* 293 N. Y. 583; *Matter of De Vries* v. *Graves,* 266 App. Div. 1030, 292 N. Y. 529; *Matter of Hewitt* v. *Bates,* 297 N. Y. 239; *United States* v. *Commissioner of Immigration,* 298 F. 449; *Matter of Delpriore* v. *Ball,* 281 App. Div. 214, 306 N. Y. 775; *Matter of Geiffert* v. *Mealey,* 293 N. Y. 583; *Matter of Teague* v. *Graves,* 261 App. Div. 652, 287 N. Y. 549; *People ex rel. Moffett* v. *Bates,* 276 App. Div. 38, 301 N. Y. 597; *Matter of Adelsberg* v. *Bates,* 278 App. Div. 606; *Matter of Backman* v. *Bates,* 279 App. Div. 1115, 305 N. Y. 839; *Matter of Engelhardt* v. *Bates,* 281 App. Div. 1053; *Matter of Schmidt* v. *Bates,* 282 App. Div. 980; *Matter of Wilson* v. *Bates,* 282 App. Div. 1099; *Matter of Calder* v. *Graves,* 261 App. Div. 90, 286 N. Y. 643.) III. Petitioner derived less than 80% of his gross income from personal services actually rendered by him.

FROESSEL, J. Appellant, Donald D. Voorhees, is an orchestral conductor or musical director who, during 1941, the year in question, rehearsed and conducted the orchestras used on the weekly broadcasts of American Telephone and Telegraph's radio program "The Telephone Hour" and of DuPont's "Cavalcade of America". The State Tax Commission has determined that, in performing his services for these two broadcasts, Voorhees was "carrying on * * * an unincorporated business for purposes of the Unincorporated Business Tax imposed by Article 16-A of the Tax Law". In reaching this determination, the commission necessarily held that Voorhees was not within those provisions of section 386 of the Tax Law, which exclude from the definition of "unincorporated business"

" the practice of law, medicine, dentistry, architecture which under existing law cannot be conducted under corporate structure, and any other case in which more than eighty per centum of the gross income is derived from the personal services actually rendered by the individual or the members of the partnership or other entity in the practice of any other profession and in which capital is not a material income producing factor."

Whether the Legislature included Voorhees' occupation among those subjected to taxation under section 386 is a question of law proper for our review. As we stated in *Matter of Good Humor Corp.* v. *McGoldrick* (289 N. Y. 452, 455):

" The determination of what articles or transactions are taxable is a legislative function. It is not the function of an administrative officer to determine where the line shall be drawn which divides the field subject to taxation from the field where no tax has been imposed. That line must be drawn by statute or ordinance. The tax authorities have power only to determine whether an article comes within the field selected in the ordinance for taxation. Where the facts are not disputed, the question whether a particular article falls within that field is a question of law.

" This court has said that ' A statute which levies a tax is to be construed most strongly against the government and in favor of the citizen. The government takes nothing except what is given by the clear import of the words used, and a well-founded doubt as to the meaning of the act defeats the tax.' [Citations.] " (See, also, *Matter of Delpriore* v. *Ball*, 281 App. Div. 214, affd. 306 N. Y. 775.)

Voorhees insists that under the statutory definition he is not required to pay the assessed tax. It will be noted that to fall within the quoted general exception Voorhees must: (1) practice a " profession "; (2) derive more than 80% of his gross income from services rendered by himself personally, and (3) not have capital as a material income-producing factor. The third point — capital — we may disregard, because the commission does not even suggest that capital was such a factor in Voorhees' income. We turn then to the other two points.

Whether a certain vocation constitutes a " profession " within the meaning of section 386 of the Tax Law is a question not unfamiliar to this court. We have held that the term " pro-

fession '' included a landscape architect (*Matter of Geiffert* v. *Mealey,* 293 N. Y. 583) and an industrial designer (*Matter of Teague* v. *Graves,* 261 App. Div. 652, affd. 287 N. Y. 549), but excluded such vocations as customhouse broker (*People ex rel. Tower* v. *State Tax Comm.,* 282 N. Y. 407; *People ex rel. Robinson* v. *Graves,* 259 App. Div. 956, motion for leave to appeal denied 284 N. Y. 821), economist (*Matter of Backman* v. *Bates,* 279 App. Div. 1115, affd. 305 N. Y. 839), life insurance agent (*Matter of Recht* v. *Graves,* 257 App. Div. 889, motion for leave to appeal denied 281 N. Y. 886), specialist in corporate reorganization and finance (*People ex rel. Moffett* v. *Bates,* 276 App. Div. 38, affd. 301 N. Y. 597, certiorari denied 340 U. S. 865), and furniture designer (*Matter of De Vries* v. *Graves,* 266 App. Div. 1030, affd. 292 N. Y. 529).

It will be noted that we have not yet had a case under this statute involving one of '' the arts '' — painting, sculpture, music, drama, dancing, writing, etc. However, in *People* v. *Kelly* (255 N. Y. 396), a zoning law case, we observed (p. 400):

'' The teaching of singing or of music is a profession and is not a business, trade or industry as these words are used in the law, zoning regulation or common parlance.

'' The arguments of counsel apparently concede that the exclusions would not reach out to the doctor, the dentist, or the lawyer consulting clients at home; but no distinction can be drawn for the purposes here involved between these *professions* and those *of the musician,* artist or teacher.'' (Italics supplied.)

In any event, it seems to us that Voorhees' occupation as a musician and orchestral conductor fulfills the requirements of a profession set forth in the language of LEWIS, J.: '' We find nothing in the record to prove that the service rendered by a customhouse broker requires knowledge of an advanced type in a given field of science or learning gained by a prolonged course of specialized instruction and study. Such a requirement we regard as implicit in the term ' professional ' when given its legal application and it is read in its context in the statute here involved.'' (*People ex rel. Tower* v. *State Tax Comm.,* 282 N. Y. 407, 412, *supra.*)

The record here clearly demonstrates that Voorhees' occupation as an orchestral conductor requires knowledge of an advanced type in the field of music which can be gained only by

a prolonged course of specialized instruction and study. Although advanced formal education does not appear to be an essential element in the background of the more famous conductors, probably because institutions of higher learning did not generally make such courses with degrees available a generation or more ago, music in general is a field of study now well recognized by some of our most respected colleges and universities.

Voorhees testified at some length as to his own background in musical education, which commenced when he was five years of age. By the time he was in high school, he was already engaged in occasional professional appearances. In his second year there, he was playing in the orchestra at the Lyric Theatre in Allentown, Pennsylvania. Subsequently he conducted the orchestra at the New York Winter Garden, and in a series of Broadway musical shows. He has two honorary degrees in music from Bates and Muhlenberg colleges. When his attorney stated that he was seeking to establish by this testimony " the advanced skill and training that is necessary in order to qualify as an orchestral conductor ", the assistant director of the State Tax Commission stated: " I don't think there is any question but what he was qualified for what he was doing." It would appear that a musical director comes nearer to practicing a profession than one pursuing many of the following occupations which the State Tax Commission has determined were professions: accounting; certified shorthand reporting; chiropody; dental hygiene; engineering; optometry; osteopathy; pharmacy; physiotherapy; teaching; veterinary medicine and surgery (N. Y. State Tax Comm., Income Tax Bureau, Manual 51, p. 225).

The second point in the statute — that to be exempt from the tax more than 80% of Voorhees' gross income must be derived from his personal services — does not entail the same far-reaching implications as the first point just discussed; rather, it poses a question more or less unique to this case.

At the hearing, the commission introduced in evidence Voorhees' 1941 New York State personal income tax return. On that return under " Income ", Voorhees had reported receipt of $101,142.60 from " E. I. DuPont — Cavalcade of America ". Under " Expenses " he had listed three items

whicn are pertinent here: $54,741.00 for " E. I. DuPont — Musician Payroll ", $11,035.50 for " E. I. DuPont — Arrangers ", and $2,907.24 for " Payroll taxes ". Upon analyzing these items, the Tax Commission might * have determined that some $65,000 or more than one third of the total " Income " listed by Voorhees, was derived not from his own personal services, but from the services of musicians and arrangers who, at least on the face of this return, appeared to have been hired and paid by Voorhees. While such a conclusion may reasonably follow from a consideration of the tax return alone, other uncontradicted evidence presented at the hearing established beyond any doubt that the return does not accurately reflect the reality of the transactions reported therein.

It is not necessary here to examine the details of Voorhees' arrangement with DuPont. From a study of the whole record we are satisfied that, just as he said, Voorhees acted as the musicians' and arrangers' employer " in name only "; that he did so only for the convenience of DuPont (because of their pension system); that union law prevented him from being an actual employer; that the house contractor — a union man — engaged the musicians for the broadcasts, and that the remuneration was determined by the musicians' union. The money in question was never his own. He received it from DuPont and immediately paid it out for musicians, arrangers and payroll taxes in a wash transaction. Under this arrangement he ran no risk, he made no profit, he incurred no loss, and there was no fraud. Consequently, that money did not actually constitute a part of his own gross income, which was made up solely of fixed guest fees paid to him for his services as an orchestral conductor.

If there were evidence to support contrary conclusions, the Tax Commission's determination in this respect would of course be unassailable. However, the only " evidence " to support that determination consists of the aforesaid four entries on the 1941 return, standing alone. Voorhees' uncontradicted explanation of those entries, which was corroborated by the testimony of Pryor and Keane, the only other witnesses at the hearing, and by the various documents, removed any doubt as to their true

---

* The commission's findings do not state whether the basis of decision was that Voorhees' occupation was not a " profession " or that less than 80% of his gross income came from personal services.

meaning, which meaning is definitely adverse to the commission's position. To permit the Tax Commission to find, in the face of this uncontroverted and convincing evidence, that the money which passed through Voorhees' bank account in this wash transaction was part of his true '' income '' merely because erroneously it was so reported on his income tax return, would exalt form over substance and ignore the manifest realities underlying the method of his accounting.

Under all the circumstances, we are of the opinion that appellant was not taxable under article 16-A of the Tax Law. In reaching this conclusion we deem it unnecessary to determine whether he was an '' employee '' of the advertising agencies which acted for his two sponsors.

The order of the Appellate Division should be reversed and the determination of the State Tax Commission annulled, with costs in all courts.

DYE, J. (dissenting). I dissent and vote to affirm. We all agree that the petitioner Voorhees is a distinguished musician with an extensive educational background and experience and, as such, is recognized as one of our nation's leading orchestra conductors and musical directors. If that was all that is involved there would be little difficulty in qualifying his vocation as a profession within the commonly accepted definition as '' one skilled in the art or science of music, a conductor or performer '' (see Webster's and Century Dictionaries, Collier's Encyclopedia). However, the State Tax Commission, in dealing with the petitioner's claim of exemption for liability for payment of an unincorporated business tax, was not limited to a consideration of his education and experience, but could look into the nature and character of his activities. This is what the Tax Commission did here. They accorded the petitioner, at his request, a full dress hearing. Evidence was submitted, viz., the personal income tax return filed by the petitioner for the year 1941 which, by the way, did not state the nature of petitioner's occupation or his business or profession, oral testimony by the petitioner, his auditor and a representative of an advertising agency. The State Tax Commission, in the exercise of their administrative functions, determined as a fact that the petitioner was carrying on an unincorporated business for the

purposes of the unincorporated business tax imposed by article 16-A of the Tax Law, and that the moneys received from the broadcast of the American Telephone and Telegraph Company known as the " Telephone Hour " and of DuPont's " Cavalcade of America " constituted receipts in the course of business. The Appellate Division unanimously confirmed such determination (282 App. Div. 988) on the ground that " from this record we may not say as a matter of law that the determination of the Tax Commission was without substantial evidence to support it ". In such a setting the determination is subject to our review only within the scope of the substantial evidence rule and may not be disturbed unless shown to be " clearly erroneous " and so lacking in support in the evidence as to be " arbitrary and capricious " (*Matter of Calder* v. *Graves,* 261 App. Div. 90, 95, affd. 286 N. Y. 643; *Matter of Stork Restaurant* v. *Boland,* 282 N. Y. 256).

To become entitled to an exemption, the petitioner is required to show that he was practicing his profession and derived more than 80% of his gross income from personal services and that capital was not a material income-producing factor. In this case the latter element may be disregarded, as it is conceded that capital is not a material income-producing factor.

In making his income tax return for the year in question, the petitioner reported gross amount received $101,142.60 and then listed as deductions:

| | |
|---|---|
| Musicians' payroll | $54,741.00 |
| Arrangers | 11,035.50 |
| Payroll tax | 2,907.24 |
| or a total of | $68,683.74 |

leaving an admitted gross income of $85,099.85 concerning which more will be said later.

While the musicians' expense was an entirely legitimate deduction for purposes of computing net income tax due, its significance as an indication of the scope and character of his activities for determining the legal relationship and liability for an unincorporated business tax may not be overlooked when the record is viewed as a whole.

The income tax return as filed also listed other deductions in the amount of $44,213.82 which were allowed in the amount of

$39,213.82. This expense included such items as $13,450 for agents' commissions, $17,279.85 for entertaining, promotion etc., $4,350 for professional fees, $2,335.41 for office rent, electricity and telephones, and $2,551.64 for advertising, publicity, etc.

The petitioner says that his individual tax return as filed should not be relied on for anything except his own net personal fees per broadcast, viz.: $1,000 for the Telephone Hour and $500 for the DuPont hour; that while the return, on its face, may be susceptible of the interpretation placed on it by the commission, the proof demonstrates that in actual practice and, as a matter of fact, petitioner was not an independent contractor engaged in an unincorporated business but was simply practicing his profession as an employee. He points to the circumstance that his fee was in each instance fixed at a stated amount; that he was not the actual employer of the musicians making up the respective orchestras, as he could not be, under the union rules; that their wages were fixed by the union and the moneys received by him were for their account and were forthwith paid out in a wash transaction on which he made no profit. He asserts that the inference to be drawn from the face of the return must yield to the proof of what actually occurred.

The Tax Commission rejected this contention and refused to grant an exemption. There is basis in the record for such a conclusion. While the money received over and above the fixed fee in each instance was for expense incurred in producing the program, it is quite apparent that the fee paid was for something more than the direction of the orchestra; it was, in fact — or at least the board could reasonably so find — payment in part for use of his name as a conduit to avoid the consequences that might accrue to the sponsors for a direct hiring of the musicians and arrangers.

Tax cases, generally speaking, depend on their own set of facts and to that extent are *sui generis*; hence, the difficulty of laying down a broad general rule of universal application. The Legislature provided a standard for exemptions and named the long-recognized learned professions, but left it open to the Tax Commission to also exempt " any other cases in which more than eighty per centum of the gross income is derived from the personal services actually rendered by the individual  *  *  *

in the practice of any other profession and in which capital is not a material income producing factor." (Tax Law, § 386.) It thus charged the Tax Commission in the first instance with discretionary power to determine the petitioner's professional status. In the exercise of such discretion it is now no longer open to doubt that if there is basis in the record or justification for the administrative body's determination, it will be accepted and will not be set aside unless clearly shown to be erroneous (*Matter of Mounting & Finishing Co.* v. *McGoldrick,* 294 N. Y. 104). This principle was applied in the affirmance of the negative ruling in *Matter of Backman* v. *Bates* (279 App. Div. 1115, affd. 305 N. Y. 839) to hold the petitioner's vocation as an " economist " was not entitled to professional status for purposes of an exemption from liability for payment of an unincorporated business tax. In *Matter of De Vries* v. *Graves* (266 App. Div. 1030, affd. 292 N. Y. 529) (furniture designer), the equities in favor of the petitioner were indeed strong — much more so than here — but nonetheless we affirmed the decision of the Appellate Division which had confirmed the adverse determination of the Tax Commission as a matter of administrative discretion.

This case on its facts may not be removed from the operation of the general rule and on this record it may not be said that the negative determination was so unreasonable, arbitrary and capricious as to be erroneous as a matter of law. The petitioner and his accountant both testified that the fee-plus method used in paying for these programs through the petitioner's account was because these matters (the incidents flowing from a direct employment) " were so complicated and had so many different interferences " and Arthur Pryor, testifying for the petitioner, referred to it as " a serious problem and someone in the Company conceived the idea that Mr. Voorhees could assume the responsibility if the DuPont Company reimbursed him for whatever the costs amounted to ". Such an arrangement might well be regarded by reasonable men as a subterfuge in avoidance of a responsibility the sponsors did not care to assume. For all practical purposes, the sponsors were limiting their liability for radio broadcasts, except to the extent of paying the agreed price, by using a device designed to absolve them from any responsibility to the performers and arrangers for all

194

purposes. Such an arrangement, as the Appellate Division well said " involved many elements beyond his services as conductor " (282 App. Div. 988).

The order appealed from should be affirmed, with costs.

Conway, Desmond and Van Voorhis, JJ., concur with Froessel, J.; Dye, J., dissents in an opinion in which Lewis, Ch. J., and Fuld, J., concur.

Order reversed, etc.