In the Matter of HARRY SALTER, Appellant, against JOSEPH H. MURPHY et al., Constituting the State Tax Commission, Respondents.

Third Department, July 27, 1960.

*O'Brien, Driscoll & Raftery (Paul D. O'Brien* and *Edmund C. Grainger, Jr.,* of counsel), for appellant.

*Louis J. Lefkowitz, Attorney-General (Edwin R. Oberwager* and *Paxton Blair* of counsel), for respondents.

REYNOLDS, J. This is a proceeding under article 78 of the Civil Practice Act to review a final determination of the State Tax Commission which sustained assessments of unincorporated business taxes imposed under article 16-A of the Tax Law for period beginning March 21, 1948 and ending August 31, 1952. These taxes were assessed against the earnings of a group, Harry Salter, Mark Goodson, Howard Connell and Louis G. Cowan, Inc., bound under an agreement which provided for the production of the radio and television show called " Stop the Music." Petitioner challenges the assessment on the grounds that he was engaged in the practice of his profession as a musical director and orchestra leader and additionally that the income sought to be taxed was received by him as an employee during the period involved.

The problem facing the court is the interpretation of the agreement entered into for the production of the show.

If there was substantial evidence before the commission that this created a partnership under subdivision 11 of section 350 of the Tax Law then the determination should be confirmed. If not, then the determination should be set aside since it has been settled that a professional orchestra conductor comes within the exemptions from the tax as provided for in section 386 of the Tax Law (*Matter of Voorhees* v. *Bates,* 308 N. Y. 184).

Sometime in 1948 petitioner went to Louis G. Cowan, Inc., a firm engaged in producing radio and television shows, with the idea and format for " Stop the Music." Thereafter, petitioner and Cowan, Inc., together with one Mark Goodson and one Howard Connell decided to produce the show. Cowan, Inc., was to have charge of managing and producing the show; Mark Goodson was to direct and also have a hand in production; Howard Connell was to be responsible for the script; and peti-

tioner was to be in charge of arranging the music, conducting the orchestra and selecting the "mystery melody." Pursuant to this plan, Cowan, Inc., contacted the American Broadcasting Company and made arrangements for airing the show. An agreement was entered into between Cowan, Inc., and the American Broadcasting Company which defined all the responsibilities to be assumed by each party in the broadcasting of the show. Goodson, Connell and petitioner were not parties to this agreement nor were their names mentioned therein. A supplementary agreement provided for financial arrangements between the parties upon sponsorship of the show by a commercial manufacturer and further obligations and responsibilities were provided for.

After the show had been broadcast for a short time an agreement was entered into among Cowan, Inc., Goodson, Connell and petitioner. This agreement provided that in consideration of the various contributions of each party to the show the "property" (the show), its title and format, all rights, etc., were to be jointly held by all in the proportions of 40 (Cowan, Inc.), 20, 20, and 20; all should have the right and duty of general supervision, to employ and enter into contracts for employment of talent, etc.; to negotiate for the sale of the show to sponsors and to maintain liaison with these sponsors and to provide clerical and secretarial assistance where needed. Then followed an enumeration of the services to be rendered by the parties and the compensation to be awarded for these services (fixed fees plus distributive share in proportion to percentage of the "property" owned by each). It was further provided that if any party should provide substitutes for the rendition of his particular services that party was to pay up to $400 per week of the fee out of his participating share, amounts over that being equally assumed by the others. Cowan, Inc., was authorized to negotiate and contract for sale of the program to the network and any disputes that might arise among the parties was to be resolved by a majority vote.

Based on this agreement the commission found a partnership. Subdivision 11 of section 350 of the Tax Law, provides: "The word 'partnership' includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on or being liquidated, and which is not, within the meaning of this chapter, a trust or estate or a corporation; and the word 'partner' includes a member in such a syndicate, group, pool, joint venture or organization."

The commission argues that while it may be true that a person rendering services as a professional man may not be taxed under article 16-A (Tax Law, § 386; *Matter of Voorhees,* 308 N. Y. 184, *supra*) he may be so taxed where his income is derived from nonprofessional activities (*Matter of Sundberg* v. *Bragalini,* 7 A D 2d 15, motion for leave to appeal denied 6 N Y 2d 705).

At the hearing it was developed that Cowan, Inc., kept a separate account for the show; that petitioner was paid by Cowan, Inc.; that petitioner received his 20% of the net income derived from the show; that he was considered an employee by the musician's union which arranged for the hiring of orchestra members when needed; that he would, on occasion, provide a substitute for himself to carry out the duties for which he was responsible with no basic impairment to his share of net income (as provided in the contract); and that during the years in question his sole income was derived from the show. Nothing from the testimony shows any variance between what was provided for in the contract and the manner in which it was carried out. It is apparent that the working arrangement among the parties concerned created somewhat of a hybrid situation, i.e., there were elements of a mere employment type of situation as well as elements of a partnership. Section 386 of the Tax Law provides two requisites necessary for exclusion of a professional man, (a) that he earn 80% of his income from the practice of his profession and (b) that capital is not a material income producing factor. Petitioner meets both of these requirements plus the fact his actual duties coincide with those excepted in *Matter of Voorhees (supra)*, but in this case we have an agreement.

This agreement, and all that was done pursuant to it, certainly provides multiple indications of a joint venture. Petitioner's argument that the mode of payment was only a fee-paying arrangement might be acceptable, especially when coupled with the facts that he had no right to contract with others and most " outside " obligations were lodged with Cowan, Inc. But the parties to the contract all had the right of " general supervision ", the right to substitute their services without sacrificing all their income, and the right to settle disputes by a majority vote. An agreement mixed as this one is provides a factual question for the commission's determination. There is much more here indicative of a business situation than there was in *Matter of Voorhees (supra)*.

It is our view that there was substantial evidence which supports the commission's finding of a partnership agreement and the determination should be confirmed.

BERGAN, P. J., COON, GIBSON and HERLIHY, JJ., concur.

Determination confirmed, without costs.