■ In the Matter of BUILDING CONTRACTORS ASSOCIATION, INC., et al., Respondents, v JAMES H. TULLY, JR., as Commissioner of Taxation and Finance of the State of New York, et al., Appellants. — Appeal from a judgment of the Supreme Court at Special Term (Klein, J.), entered April 27, 1981 in Albany County, which, *inter alia,* (1) declared that 20 NYCRR 527.7 (b) (2) was invalid in part, and (2) declared that the New York State Department of Taxation and Finance's 1976 Sales Tax Information Letter No. 45 was invalid in part. This matter was originally commenced in 1977 as a proceeding under CPLR article 78. On appeal from a judgment of dismissal of that proceeding, this court reversed, converted the matter to an action for a declaratory judgment, and remitted it to Special Term for further proceedings (*Matter of Building Contrs. Assn. v Tully,* 65 AD2d 199). When the parties thereafter cross-moved for summary judgment, Special Term granted petitioners' motion. It held that 20 NYCRR 527.7 (b) (2), effective September 1, 1976, was invalid as beyond the scope and intendment of section 1105 (subd [c], par [5]) of the Tax Law in providing for the imposition of a sales tax upon receipts from the sale of services consisting of the removal of construction and demolition debris from the site of and in conjunction with a "capital improvement". Special Term also held invalid Sales Tax Information Letter No. 45 of the Department of Taxation and Finance, insofar as it directed the imposition of a sales tax on receipts from the sale of services involved in the installation of interior walls in buildings as part of a "capital improvement" unless they extended above the

---

* Although named as a defendant, it is unclear from the record whether K. L. & Spitler, Inc., was ever served with process.

finished ceiling and started below the finished floor, on the ground that such ruling was contrary to section 1105 (subd [c], par [3]) of the Tax Law and Tax Commission regulation 20 NYCRR 527.7 (b) (4).

VALIDITY OF 20 NYCRR 527.7 (B) (2)

Section 527.7 specifically refers to, and is an explication of section 1105 (subd [c], par [5]) of the Tax Law (hereinafter par 5). Since, as is self-evident, the Tax Commission lacks the power to legislate new taxes, the measure of the validity of the portion of its regulation taxing demolition and construction debris removal services connected with a capital improvement is its consistency with paragraph 5, which imposes the sales tax upon receipts from the sale of the services of "[m]aintaining, servicing or repairing real property * * * as distinguished from adding to or improving such real property * * * by a capital improvement". In contrast to the sale of goods, every one of which is a taxable transaction under subdivision (a) of section 1105 of the Tax Law "except as otherwise provided", taxation of the sale of services is limited under subdivision (c) of section 1105 to "receipts from every sale * * * of the following [i.e., enumerated] services:". Thus, the question here is not the validity of an administrative determination of the scope of an exemption or exclusion, but "whether property, income, a transaction or event is subject to taxation" (*Matter of Grace v New York State Tax Comm.*, 37 NY2d 193, 196). As thus posed, the traditional rule applies that " '[a] statute which levies a tax is to be construed most strongly against the government and in favor of the citizen. The government takes nothing except what is given by the clear import of the words used, and a well-founded doubt as to the meaning of the act defeats the tax' " (*id.*, citing *People ex rel. Mutual Trust Co. v Miller,* 177 NY 51; *Matter of Voorhees v Bates,* 308 NY 184). The statute defines the service, the sale of which is the taxable transaction, as "[m]aintaining, servicing or repairing real property, property or land" (Tax Law, § 1105, subd [c], par [5]). Manifestly, the "clear import" of the quoted phrase does not include the removal of demolition or construction debris from the site of a capital improvement. In construing "maintaining, servicing or repairing real property", we are required to give these common words their commonly accepted meaning unless another meaning is obviously intended (*Matter of Steinbeck v Gerosa,* 4 NY2d 302, 308, app dsmd 358 US 39). The Tax Commission itself has very aptly described the commonly accepted meaning of "maintaining, servicing or repairing real property" in the same regulation under review here: "Maintaining, servicing and repairing are terms which are used to cover all activities that relate to *keeping* real property in a condition of fitness, efficiency, readiness or safety or restoring it to such condition" (20 NYCRR 527.7 [a] [1]; emphasis added). The removal of debris resulting from demolition or construction at a capital improvement project hardly fits within that definition. Respondents have not cited any language in the statute indicating that the ordinary meaning of the operative phrase should be varied here. Contrary to their contentions, the references to "trash removal" and "capital improvement" in paragraph 5 clearly do not support that conclusion. Under that paragraph, trash removal *"from buildings"* is taxable as an exception to the exclusion of certain *"interior* cleaning and maintenance services", all of which are clearly related to services performed at existing buildings, and not at construction sites. It is true that the "capital improvement" tax exemption for sales of tangible personal property (Tax Law, § 1115, subd [a], par [17]) applies only when the personal property becomes part of the realty. But it does not follow, as respondents suggest, that the reference to "capital improvement" in paragraph 5 implies that services not directly resulting in additions to the real

property are fully taxable. Almost by definition, personal property cannot constitute a capital improvement unless it becomes part of the realty. In the case of capital improvement-related services, however, such physical test cannot be applied, and the Tax Commission has instead incorporated the criterion of the "end result" of the service to determine taxability (20 NYCRR 527.7 [b] [4]). Since the completion of a capital improvement project generally cannot be accomplished without removal of construction and demolition debris, the services at issue here fall well within the commission's "end result" test for exemption from the tax. In view of the total absence of any statutory support for the Tax Commission's expansive interpretation of "maintaining, servicing or repairing real property" to include removal of construction and demolition debris from the site of a capital improvement, Special Term was correct in invalidating regulation 20 NYCRR 527.7 (b) (2) as thus applied.

## VALIDITY OF SALES TAX INFORMATION LETTER NO. 45

The remaining issue turns on whether Sales Tax Information Letter No. 45 is consistent with the portions of section 1105 (subd [c], par [3]) of the Tax Law which excepts from taxation the sale of services of installing tangible personal property "which, when installed, will constitute an addition or capital improvement to real property, property or land, as the terms real property, property or land are defined in the real property tax law". Section 102 (subd 12, par [b]) of the Real Property Tax Law defines "real property", "property" or "land" in pertinent part as "[b]uildings and other articles and structures, substructures and superstructures erected upon * * * the land, or affixed thereto". The settled case law criteria for determining the taxability of any such installation, either as personal property under the sales tax law or as real property under the Real Property Tax Law, concern the permanency of the affixation, whether the item can readily be removed without damage to it or the realty, and whether it was intended as a permanent installation (see *Matter of Consolidated Edison Co. of N. Y. v City of New York*, 44 NY2d 536; *Matter of Wood Enterprises v State Tax Comm.*, 67 AD2d 1042; *Matter of Central Off. Alarm Co. v State Tax Comm.*, 58 AD2d 162, mot for lv to app den 44 NY2d 642; *Matter of 100 Park Ave. v Boyland*, 144 NYS2d 88, mod 284 App Div 1033, revd 309 NY 685). The Tax Commission set forth the substance of these criteria in defining a capital improvement in 20 NYCRR 527.7 (a) (3). Without any reference whatsoever to the full terminology of the statutory exception, or to the foregoing judicial and official administrative interpretations, Sales Tax Information Letter No. 45 baldly states that after October 1, 1976, interior partition systems which do not extend above the finished ceiling and start below the finished floor remain tangible personal property and that their installation is subject to the sale tax. In effect, the letter creates a new conclusive presumption that all such partition systems do not constitute an addition or capital improvement to real property. No significant exercise of the imagination is necessary to envision instances where installations of interior partition systems not extending below a finished floor or above a finished ceiling are of such a permanent nature that they unquestionably become part of the real property, and are thus fully subject to realty taxes under the Real Property Tax Law. In recognition of the necessity for the distinction, interior partition systems previously were not subject to the sales tax unless movable, portable, demountable, or otherwise not basically designed as a permanent installation. Sales Tax Information Letter No. 45 summarily and arbitrarily changes this standard without advancing any legal, factual, or policy justification therefor. For all of the foregoing reasons Special Term was correct in declaring its invalidity (see *Matter of New York Life Ins. Co. v State Tax*

*Comm.,* 80 AD2d 675; *New York State Cable Tel. Assn. v State Tax Comm.,* 59 AD2d 81). Judgment affirmed, with costs. Mahoney, P. J., Sweeney, Mikoll and Levine, JJ., concur.

Yesawich, Jr., J., concurs in part and dissents in part in the following memorandum. Yesawich, Jr., J. (concurring in part and dissenting in part). I respectfully dissent from that aspect of the majority's decision which holds that receipts from removing construction site debris are nontaxable. Section 1105 (subd [c], par [5]) of the Tax Law explicitly imposes a tax on services rendered in "[m]aintaining, servicing, or repairing real property, property or land * * * as *distinguished from* adding to or improving such real property, property or land, *by a capital improvement*" (emphasis added). Although the statutory definition of "capital improvement" was not added to the Tax Law until July 7, 1981 (L 1981, ch 471, § 1), its meaning was discernible from section 1101 (subd [b], par [4]) and section 1115 (subd [a], pars [15], [16], [17]) which, when read together, expressed the Legislature's intent that to be considered a capital improvement, tangible personal property must become a physical or integral component part of the structure, building or land involved, and further that the service of installing such property was exempt from taxation. The statutory language thus accords tax exempt status to only those services which result in a permanent capital improvement. Unlike the actual construction itself, carting away debris simply does not permanently improve real property. 20 NYCRR 527.7 (b) (4), which provides that a service is not taxable if its end result is a capital improvement, does not in my judgment impair this conclusion. Even if removal of the debris is a necessary incident of construction, so that in one sense its end result is a capital improvement, so are many other services which concededly are taxable. For instance, the providing of mechanical repairs and maintenance to the construction machinery used is hardly less essential to the process than carting away debris, and yet clearly this service is taxable under 1105 (subd [c], par [3]). What seems obvious from this illustration is that the Legislature did not have in mind the exemption of all services which *indirectly* result in capital improvements; otherwise the statute would be self-contradicting. Rather, the narrow exception contained in the statute applies only to those activities which *directly* produce a permanent capital improvement to the property. That the Tax Commission has apparently not chosen to tax the carting away of *excavated* earth and rock is of no consequence, for not only is the commission's policy in this regard not before us, but the record is insufficiently developed to lend itself to an examination of the reasons underlying that policy.