In the Matter of PARKMED ASSOCIATES et al., Petitioners, v
NEW YORK STATE TAX COMMISSION, Respondent.

Third Department, June 30, 1983

APPEARANCES OF COUNSEL

*Carro, Spanbock, Fass, Geller, Kaster & Cuiffo (Charles
D. Bock, Mark Budoff* and *John J. Fausti* of counsel), for
petitioners.

*Robert Abrams, Attorney-General (Lawrence J. Logan*
and *William J. Kogan* of counsel), for respondent.

OPINION OF THE COURT

MAIN, J. P.

Petitioner Parkmed Associates is a limited partnership
and petitioner Parkmed Company is a general partnership
(the two entities will be jointly referred to as Parkmed).
During the years 1973 through 1975 Parkmed owned and
operated a diagnostic and treatment clinic for the termina-
tion of pregnancies, performing an average of 20,000 abor-

tions per year, and for these years it filed New York State partnership tax returns and indicated thereon that it was not liable for the unincorporated business tax (Tax Law, art 23 [repealed L 1978, ch 69, § 7, eff Dec. 31, 1982]). Nonetheless, on June 22, 1977, the Audit Division of the State Tax Department issued a statement of audit changes against petitioners for unincorporated business taxes for the years 1973 through 1975, and it subsequently issued a notice of deficiency in the sum of $78,077.07 plus interest.

Asserting that it was exempt from such taxes pursuant to subdivision (c) of section 703 of the Tax Law because it was engaged in the practice of medicine, Parkmed responded by filing a petition for redetermination of a deficiency or for refund of unincorporated business taxes for the years in question. Following a hearing, however, the State Tax Commission denied the application and held that Parkmed was not entitled to the claimed exemption because it had failed to satisfy the "eighty per centum" test of subdivision (c) of section 703 of the Tax Law, pursuant to which Parkmed would be exempt from the subject tax only if more than 80% of its gross income had been derived from personal services actually rendered by its individual members. Parkmed has now commenced the instant proceeding to annul the Tax Commission's determination, and for the reasons that follow we find that its arguments are unpersuasive and that the challenged determination should be confirmed.

In so ruling, we initially emphasize the well-settled principle that where, as here, a taxpayer claims the benefit of a statute providing an exemption from taxation, the taxpayer bears the burden of establishing his eligibility for the exemption (*Matter of Whittemore v Tax Comm. of State of N. Y.,* 92 AD2d 1081). Moreover, Parkmed correctly points out that in determining whether it can properly reap the benefits of the subject exemption, the crucial issue is what its actual activities were from 1973 through 1975, i.e., whether its activities constituted "the 'practice of [a] profession' as opposed to a purely commercial or business enterprise" (*Matter of Whittemore v Tax Comm. of State of N. Y.,* 92 AD2d 1081, 1082, *supra; Matter of Mongitore v*

*Murphy,* 44 AD2d 746; *Matter of Kahn & Jacobs v State Tax Comm.,* 39 AD2d 278, affd 33 NY2d 549).

Judging the uncontested testimony and documentary evidence in the record by this standard, we can only conclude that Parkmed's activities during the time at issue rendered it a commercial or business enterprise as a matter of law and that its member-partners were consequently not engaged in the practice of medicine so as to be entitled to the statutory exemption from the unincorporated business tax. In this regard it should be noted that there were 26 member-partners in 1973, 29 member-partners in 1974 and 44 member-partners in 1975. Of these member-partners, only Dr. Milton Danon devoted 100% of his time to the operation of the clinic as its salaried executive director. Two other member-partners, Dr. Saul Drubin and Gregory Cinnella, an accountant, devoted about 5% of their time to the clinic, and all the remaining member-partners devoted no time to the clinic, but rather merely invested their capital in the business and shared in its substantial profits in proportion to their individual investments. Additionally, while Dr. Danon performed roughly 3% of the 20,000 annual abortions at the clinic, all of the remaining abortions were performed by physicians working on an independent contractor basis. These latter physicians were not member-partners and were paid a fee of $30 for each abortion performed.[*]

Of further significance is Parkmed's operation of the clinic in violation of pertinent statutes and regulations (see *Matter of Strayer v State Tax Comm.,* 285 App Div 739). Thus, while a limited partnership is expressly prohibited by law from operating a diagnostic and treatment facility such as the clinic herein (Public Health Law, § 2801, subd 1; § 2801-a, subd 4, par [c]; 10 NYCRR 600.9 [c]), the undisputed evidence in the record establishes that Parkmed's limited partnership was actively involved in the operation of the clinic. Also, the obvious splitting of medical fees between the doctors and the nonprofessional

---

[*] During the period at issue the clinic's gross income amounted to $2,405,710 (1973), $2,172,528 (1974) and $2,251,447 (1975), and its net profit totaled $519,484 (1973), $407,378 (1974) and $390,104 (1975). The sums paid to the independent contractor physicians totaled $439,155 (1973), $367,290 (1974) and $360,190 (1975).

investors in Parkmed was likewise legally impermissible (Education Law, §§ 6509-a, 6521, 6522; 8 NYCRR 29.1 [b] [4]).

Given all of these circumstances, petitioners' argument that the clinic was being operated by a professional partnership engaged in the practice of medicine rings exceedingly hollow. What we actually have in this case is a group of speculators who have invested their capital in a commercial or business enterprise in the form of a partnership and then shared in the profits of their venture. As a matter of law, the activities of such an enterprise plainly do not constitute the practice of a profession so as to be exempt from the unincorporated business tax under subdivision (c) of section 703 of the Tax Law.

We need reach no other issue.

The determination should be confirmed, and the petition dismissed, with costs.

LEVINE, J. (dissenting). We respectfully dissent. The majority's disaffection with the obvious profit motive underlying the organization of the two Parkmed partnerships is readily understandable. Nevertheless, based upon the Tax Commission's findings, the clear wording of the applicable regulation and established precedent, the taxpayers herein are entitled to the professional exemption from the unincorporated business tax (Tax Law, § 703, subd [c]). Undeniably, the partnerships were engaged in the practice of medicine. The Tax Commission expressly found that "petitioners owned and operated an abortion clinic" during the taxable years in question. The majority similarly recognizes the medical nature of petitioners' activities during the taxable years: "Parkmed owned and operated a diagnostic and treatment clinic for the termination of pregnancies". The test for the professional exemption has always focused on the *service rendered* by the taxpayer (see *Matter of Koner v Procaccino,* 39 NY2d 258, 262; *Matter of Voorhees v Bates,* 308 NY 184, 189-190; *People ex rel. Tower v State Tax Comm.,* 282 NY 407, 412). As this court held in *Matter of Kahn & Jacobs v State Tax Comm.* (39 AD2d 278, 280, affd 33 NY2d 549): "The determination is based upon what a partnership does, not the specific requirements

incident to the profession". The entities subject to the unincorporated business tax are the two partnerships, not the partners. Therefore, it is irrelevant that various members of the partnerships were not licensed physicians or that they did not actively engage in the partnerships' operations. Since the taxpayer-partnerships here were engaged in the practice of medicine, the Tax Commission clearly violated its own regulation in imposing the additional requirement that 80% of the partnerships' income come from services actually rendered by the partners. Under the regulations, this additional requirement only applies to professions other than law, medicine, dentistry or architecture:

"[T]he practice of the professions of law, medicine, dentistry or architecture is not deemed to constitute an unincorporated business. *In addition, the practice of any other profession* is not deemed to constitute an unincorporated business *if, in such practice,*

"(1) capital is not a material income producing factor and

"(2) more than 80 percent of the gross income * * * is derived from * * * personal services * * * rendered * * * by members of a partnership * * * engaged in the practice of the profession involved" (20 NYCRR 203.11[a]; emphasis added).

Furthermore, the alternative ground for disqualification from the exemption invoked by the majority, namely, apparent violations of various statutory provisions regulating the practice of medicine, is equally unavailing under the case law. As we further held in *Matter of Kahn & Jacobs v State Tax Comm.* (39 AD2d 278, 280, *supra*), "to deny that exemption solely for lack of total compliance with the licensing statute would be using the revenue statute to enforce police powers and for protection of the public". (See, also, *Matter of Mongitore v Murphy,* 44 AD2d 746, 747.) Nor is there support in either the statute, regulations or the case law for disqualification from the professional exemption because the entity admittedly engaged in the practice of medicine does so in an objectionably commercialized manner. That, again, is a matter which is the responsibility of the State's licensing and

regulatory authcrities exercising the State's police power and not of the State's taxing authorities. For the foregoing reasons, we vote to annul the Tax Commission's determination.

YESAWICH, JR., and WEISS, JJ., concur with MAIN, J. P.; MIKOLL and LEVINE, JJ., dissent and vote to annul in an opinion by LEVINE, J.

Determination confirmed, and petition dismissed, with costs.