In the Matter of BREEZY POINT SURF CLUB, INC., et al., Petitioners, v NEW YORK STATE TAX COMMISSION, Respondent.

Third Department, October 31, 1985

### APPEARANCES OF COUNSEL

*Fox Glynn & Melamed* (*John R. Horan* and *Alan R. Johnson* of counsel), for petitioners.

*Robert Abrams, Attorney-General* (*Francis V. Dow* and *Peter J. Dooley* of counsel), for respondent.

### OPINION OF THE COURT

HARVEY, J.

The facts giving rise to this dispute date back to 1969. Petitioners were audited by the Sales Tax Bureau of the Department of Taxation and Finance and were informed by the auditors that the rent they charged their members for cabanas was nontaxable. It appears that respondent changed its position and indicated in 1974 that sales taxes would be assessed on cabana rentals, which it did for the tax years beginning in 1971. This assessment was contested and the issue was finally decided in petitioners' favor (*Matter of Breezy Point Surf Club v State Tax Commn.*, 48 NY2d 776, *affg on opn below* 67 AD2d 760) on November 15, 1979. On that date, it was clear that respondent

never had the authority to assess a sales tax on the rental of cabanas owned by petitioners. It would appear to be equally clear that on that date petitioners owed no sales taxes to the State based upon cabana rentals.

However, respondent has now determined that petitioners owe the State $179,047.27 plus interest. Its reasoning is difficult to follow. Apparently, the factual background for that theory of liability had its genesis in late 1974 when petitioners learned that respondent was about to change its position as to the taxability of cabana rentals. At that time, the management of the two not-for-profit corporations which are petitioners herein made two determinations. The first was that cabana rentals were not taxable legally and that the assessments would be vigorously contested. The second was that it was necessary to establish a contingency fund in case their efforts were unsuccessful in resisting the assessments. Because their only source of income was that received from their members, they decided to assess each member tenant 8% of rentals from that time until the controversy was resolved. This money was set aside in an escrow account, entirely separate from any other funds available to petitioners. While the litigation was in progress, petitioners neither included cabana rentals in their tax returns nor paid to respondent any of the funds collected from their members. After the litigation was terminated, petitioners paid the legal and administrative expenses and then refunded the balance of the escrow account to the members who had contributed to it. About 50% of the fund was returned to the members in cash.

From these facts, respondent concludes that petitioners owe money to the State. It has concluded that the money collected from petitioners' members was purportedly a tax. It further concludes that the money should have been turned over to respondent. Finally, it concludes that because of the Statute of Limitations contained within Tax Law § 1139, the State is now solely entitled to all of the funds collected with the exception of that portion which was actually refunded to the members in cash.

Respondent's contentions are most startling. It is significant that no case law was cited as authority for the establishment of this tax assessment. Respondent relies upon Tax Law §§ 1137, 1138 and 1139. The "notice[s] of determination and demand for sales and use taxes due" contained the language, "The following *taxes* have been determined to be due in accordance with Section 1138 of the Tax Law, and is based on an audit of your records"

(emphasis supplied). Section 1138 pertains to determinations of taxes upon the basis of extraneous evidence and establishes procedures for contesting those determinations. Nothing contained in the section can be construed as authorization for determination of a tax based upon the failure of a taxpayer to pay money to respondent pursuant to Tax Law § 1137.

Respondent contends that Tax Law § 1137 required petitioners to pay over to the State the money it collected from their members and placed in an escrow account. The key paragraph, respondent contends, is: "All moneys collected by such person, purportedly as tax imposed by this article or pursuant to article twenty-nine, with respect to any receipt, amusement charge or rent not subject to tax, and all moneys collected with respect to any receipt, amusement charge or rent subject to tax, purportedly in accordance with a schedule prescribed by the tax commission but actually in excess of the amount stated in such schedule as the amount to be collected." (Tax Law § 1137 [a] [iii].)

Assuming, arguendo, that petitioners had the duty to turn the escrow funds over to respondent, nothing contained in that section nor any other section cited by respondent grants respondent the authority to assess a sales tax against a taxpayer simply because he failed to abide by that statute. We conclude that respondent has no power to do that which it seeks to do.

But, if we were to assume that respondent does have such power, we would have to conclude that its decision was not a rational decision based upon substantial evidence. The record is uncontradicted that neither the membership nor the management of petitioners understood that the money collected was a tax or a purported tax. The communications between management and members were unambiguous. It was the collection of a provisional fund as a hedge in the event they lost their case. It is incumbent upon respondent to base its decision on the record as a whole (*Matter of Voorhees v Bates,* 308 NY 184, 191-192). The government may take nothing except that which it is entitled to under the clear import of the statute (*Matter of Grace v New York State Tax Commn.,* 37 NY2d 193, 196). Additionally, we conclude that respondent's finding that payment of legal and administrative costs did not constitute a refund to be a conclusion which is completely indefensible and illogical. The actual effect of petitioners' procedure was the same as that which would have resulted from a 100% reimbursement in cash and a charge back for expenses.

We conclude that respondent has contorted the statutes upon which it relies and thereby has endeavored to create a windfall for the State which is contrary to the letter and spirit of the law.

MAHONEY, P. J., KANE, MAIN and CASEY, JJ., concur.

Determination annulled, and petition granted, with costs.