# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 56
In the Matter of Wegmans Food
Markets, Inc.,
      Respondent,
    v.
Tax Appeals Tribunal of the State
of New York,
      Respondent,
Commissioner of Taxation and
Finance of the State of New York,
      Appellant.

Frederick A. Brodie, for appellant.
Jeffrey J. Harradine, for respondent Wegmans Food Markets, Inc.

FEINMAN, J.:

Tax Law § 1105 (c) (1) imposes a sales tax on certain information services, "but exclud[es] the furnishing of information which is personal or individual in nature and which is not or may not be substantially incorporated in reports furnished to other persons."

- 1 -

In this CPLR article 78 proceeding, we hold that respondent Tax Appeals Tribunal of the State of New York (the Tribunal) rationally determined that the information services receipts at issue were not excluded from the tax.

I.

Petitioner Wegmans Food Markets, Inc. is a regional supermarket chain that operates throughout New York. Wegmans monitors its competitors' retail prices as part of its pricing strategy. Since 1995, Wegmans has engaged RetailData, LLC to perform such monitoring through competitive price audits (CPAs). Wegmans selects the products and period covered by a CPA and which of its competitors, and their specific locations, RetailData should surveil. RetailData's data collectors then travel to the locations specified in Wegmans's request and collect the information by scanning prices from the store shelves using scanners or smart phones. After collecting the prices, RetailData validates the information, creates reports, and furnishes the reports to Wegmans in its requested format. The CPAs and the resulting reports are kept confidential to prevent Wegmans's competitors from discovering the products it monitors and its pricing strategies.

The New York State Department of Taxation and Finance (the Department) conducted an audit of Wegmans's sales and use tax liability for the period June 2007 through February 2010. During the audit, the Department concluded that Wegmans's purchases of CPAs and the corresponding reports from RetailData were taxable receipts under Tax Law § 1105 (c) (1). After the Department issued a notice of determination imposing additional sales tax, Wegmans petitioned the Division of Tax Appeals

challenging the determination. Wegmans sought a refund of the money it paid to satisfy the tax liability, arguing that "the services rendered by RetailData qualify as an exempt information service which is 'personal and individual in nature.'"

Following an evidentiary hearing, an administrative law judge (ALJ) denied the petition. Upon Wegmans's exception to the ALJ's determination, the Tribunal, among other things, affirmed. It concluded that the information services at issue do not qualify for section 1105 (c) (1)'s exclusion because the data in the CPA reports was culled from supermarket store shelves, which are widely-accessible and contain non-confidential data. In addition, although there was some customization of the information, that process did not render the information personal or individual in nature. Given its determination, the Tribunal declined to reach the exclusion's second requirement, that is, whether the information may be substantially incorporated into reports furnished to RetailData's other clients. Wegmans commenced this CPLR article 78 proceeding against the Tribunal and respondent Commissioner of Taxation and Finance of the State of New York (the Commissioner) in the Appellate Division pursuant to Tax Law § 2016, seeking a judgment annulling the Tribunal's determination.

The Appellate Division granted the petition and annulled the Tribunal's determination. Initially, the Court stated that "in the event of ambiguity, where, as here, an exclusion rather than an exemption is involved, the statute must be strictly construed in favor of the taxpayer" (155 AD3d 1352, 1354 [3d Dept 2017] [internal quotation marks and citation omitted]). The Court recognized "that Matter of Mobil Oil Corp. v Finance

Adm'r of City of N.Y. (58 NY2d 95, 99 [1983]) indicates that exclusions are to be construed against the taxpayer" (155 AD3d at 1354 n 1).  However, the Court disagreed with our statement of law, explaining that "the proposition in [Matter of Mobil Oil Corp.] relies upon precedent that refers to exemptions rather than exclusions" (id.).

Turning to application of the statutory exclusion, the Court acknowledged that "the pricing information that RetailData collects on [Wegmans's] behalf is information that is available to the public," but nonetheless concluded that "such information does not derive from a singular, widely accessible common source or database as that test has previously been applied and commonly understood in determining the applicability of the subject tax exclusion" (id. at 1355).  The Court further determined that "the information furnished to [Wegmans] was uniquely tailored to [its] specifications and was related exclusively to implementation of its confidential pricing strategy" (id. at 1356).  Accordingly, Wegmans's "purchase of these information services should have been excluded from taxation" because "the information services that [Wegmans] purchased from RetailData were personal or individual in nature and were not substantially incorporated into reports of others" (id.).[1]

---

[1] We reiterate the longstanding rule that, in CPLR article 78 proceedings, "courts have no right to review the facts generally as to weight of evidence, beyond seeing to it that there is substantial evidence" (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 230 [1974] [internal quotation marks and citation omitted]).  While CPLR 7804 (g) permits the Appellate Division to dispose of issues in the proceeding, it does not provide that court with the power to conduct an "independent factual review of the record" (155 AD3d at 1357 n 5).

We granted the Commissioner leave to appeal from the Appellate Division judgment, and now reverse.

II.

In <u>Matter of Mobil Oil Corp.</u>, we concluded: "In the case of statutory exclusions, the presumption is in favor of the taxing power" (58 NY2d at 99). We reaffirm this straightforward statement of law in light of the Appellate Division's refusal to apply it. By doing so, we neither state a new rule under which "the taxpayer always loses" (concur op, at 1) nor overrule <u>Matter of Grace v New York State Tax Commn.</u>, 37 NY2d 193 [1975], <u>rearg</u> <u>denied</u> 37 NY2d 816 [1975]), despite the concurrence's hyperbolic claims to the contrary. We reiterate our settled rule of construction to ensure consistent application of taxing statutes in the face of our colleagues' apparent invitation for continued evasion (<u>see</u> concur op, at 10; Wilson, J., dissent op, at 3).

In general, "[a] statute which levies a tax is to be construed most strongly against the government and in favor of the citizen" (<u>Matter of Grace</u>, 37 NY2d at 196 [internal quotation marks and citation omitted]; <u>see</u> <u>Matter of Mobil Oil Corp.</u>, 58 NY2d at 99). "The principle is, however, applicable only in determining whether property, income, a transaction[,] or event is subject to taxation" (<u>Matter of Grace</u>, 37 NY2d at 196). "[T]he rule is otherwise with respect to the taxpayers' right to exclude items from taxation" (<u>Matter of Mobil Oil Corp.</u>, 58 NY2d at 99). In other words, when the matter at issue "is subject to the taxing statute," but the question is whether taxation is negated by a statutory exclusion or exemption, "a different rule applies" (<u>Matter of Grace</u>, 37 NY2d at 196). In

that instance, "the presumption is in favor of the taxing power" (Matter of Mobil Oil Corp., 58 NY2d at 99; see Matter of Grace, 37 NY2d at 196).

In defining the applicable rules for construing tax statutes, we have not differentiated between exemptions, exclusions, and deductions (see Matter of 677 New Loudon Corp. v State of N.Y. Tax Appeals Trib., 19 NY3d 1058, 1060 [2012], rearg denied 20 NY3d 1024 [2013], cert denied 571 US 952 [2013]; Matter of Charter Dev. Co., L.L.C. v City of Buffalo, 6 NY3d 578, 582 [2006]).[2]  Contrary to the Appellate Division's conclusion (see also Matter of Towne-Oller & Assoc. v State Tax Commn., 120 AD2d 873, 874 n [3d Dept 1986]) and Wegmans's argument, our cases in this regard do not turn on syntactical errors conflating these concepts.  Rather, we have adopted a functional analysis that affords a singular and workable rule for construing exemptions, exclusions, and deductions, each of which operate to negate the taxpayer's obligation to pay the otherwise applicable tax.

In Matter of Grace, for instance, we concluded that "[t]he same rules apply" to deductions and exemptions because "[a] deduction is functionally a particularized species of exemption from taxation" (37 NY2d at 197).  We explained that "[a]n exemption from taxation" and, therefore, a deduction, "must clearly appear, and the party claiming it must be able to point to some provision of law plainly giving the exemption" (id. at 196 [internal

_____

[2] The federal view accords with our approach (see e.g. Stinson Estate v United States, 214 F3d 846, 848 [7th Cir 2000] [classifying "deductions, exemptions, and exclusions" as "matters of legislative grace"]; Rozpad v Commissioner of Internal Revenue, 154 F3d 1, 3 [1st Cir 1998] ["all exclusions from taxation must be narrowly construed"]), but does not dictate our analysis (see concur op, at 7).

quotation marks and citation omitted]).  "Indeed, if a statute or regulation authorizing an exemption is found, it will be construed against the taxpayer" (id. [internal quotation marks and citation omitted]).  "This is because an exemption is not a matter of right, but is allowed only as a matter of legislative grace" (id.).  Still, "the interpretation should not be so narrow and literal as to defeat [the exemption's] settled purpose" (id.).

The concurrence concedes, as it must, that Matter of Grace did "not expressly state that ambiguities in statutory exclusions are interpreted in favor of the taxpayer" (concur op, at 5).  Matter of Grace did not make this statement because it is not the law.  Rather than overrule Matter of Grace, in Matter of Mobil Oil Corp. we extended the functional approach, relying on the analysis previously applied to exemptions and deductions.  On the strength of this analysis, we held that, like exemptions, "[t]ax exclusions are never presumed or preferred and before [a] petitioner may have the benefit of them, the burden rests on [the petitioner] to establish that the item comes within the language of the exclusion" (Matter of Mobil Oil Corp., 58 NY2d at 99).  Consequently, as with exemptions, "the presumption is in favor of the taxing power" when construing "statutory exclusions" (id.).[3]  We decline the invitation, endorsed by the concurrence and both dissents, to overrule this clear precedent based on a revisionist analysis that ignores our case law.

_____

[3] Fairland Amusements v State Tax Commn. is not to the contrary (see 66 NY2d 932 [1985]).  The issue there involved interpretation of the phrase "place of amusement" in the clause generally imposing the tax.  The statute at issue, Tax Law § 1105 (f) (1), taxed "[a]ny admission charge . . . in excess of ten cents to or for the use of any place of amusement in the state."  The taxpayer did not rely on any of the exceptions included in that subsection and, thus, the question there was whether the tax applied at all, not whether the transaction fit within a statutory exclusion.  Our memorandum decision, interpreting

III.

A taxpayer has the burden "to overcome tax assessments" (Matter of Grace, 37 NY2d at 195) and to "establish its entitlement to an exclusion from tax" (Matter of Colt Indus. v New York City Dept. of Fin., 66 NY2d 466, 471 [1985], rearg denied 67 NY2d 757 [1986]). In the sales tax context, in particular, "it shall be presumed that all receipts for . . . services of any type mentioned in" Tax Law § 1105 (c) "are subject to tax until the contrary is established" (Tax Law § 1132 [c] [1]). Moreover, "[i]f there are any facts or reasonable inferences from the facts to sustain it, the court must confirm the [Tribunal's] determination" (Matter of Grace, 37 NY2d at 195).

Our application of the principles articulated above begins with the text of Tax Law § 1105 (c) (1), which imposes a tax on "[t]he receipts from every sale" of "[t]he furnishing of information by printed, mimeographed or multigraphed matter or by duplicating written or printed matter in any other manner, including the services of collecting, compiling or analyzing information of any kind or nature and furnishing reports thereof to other persons." The statute "exclud[es] the furnishing of information which is personal or

"the statutory scheme," therefore stated the rule for construing general taxing provisions, not the more specific rule for construing statutory exclusions (Fairland Amusements, 66 NY2d at 934). When we later interpreted one of the exceptions listed in that subsection, "dramatic or musical arts performances," we applied the specific rule of interpretation, construing the provision against the taxpayer (see Matter of 677 New Loudon Corp., 19 NY3d at 1060).

individual in nature and which is not or may not be substantially incorporated in reports furnished to other persons" (Tax Law § 1105 [c] [1]).

Here, Wegmans concedes that the information services provided by RetailData fall within the general taxing provision of section 1105 (c) (1). The determinative issue before this Court, therefore, is whether the Tribunal rationally determined that those information services were not excluded from the sales tax (see Matter of Colt Indus., 66 NY2d at 471). We conclude that the Tribunal's determination that Wegmans failed to establish its entitlement to the statutory exclusion, because the information at issue was not personal or individual in nature, was rational and should be confirmed.

The information that RetailData compiled and the reports it furnished to Wegmans derived from a non-confidential and widely-accessible source, the supermarket shelves of Wegmans's competitors. There is nothing about the information itself that is personal or individual in nature. RetailData simply collected the prices of products at grocery stores and compiled that information into reports which it furnished to Wegmans. The Tribunal rationally concluded that the information RetailData furnished to Wegmans was not personal or individual in nature because it was collected from prices on supermarket shelves, which are publicly available, widely-accessible, and not confidential. Moreover, in these circumstances, it was rational for the Tribunal to determine that RetailData's customization of the publicly-available information it collected from supermarket shelves into a report format did not render the furnished information personal or individual in nature (see Matter of ADP Automotive Claims Servs. v Tax Appeals Trib., 188 AD2d 245,

248 [3d Dept 1993], lv denied 82 NY2d 655 [1993]; Matter of Rich Prods. Corp. v Chu,

132 AD2d 175, 177-178 [3d Dept 1987], lv denied 72 NY2d 802 [1988]).[4]  Accordingly,

the Appellate Division judgment should be reversed, with costs, the Tribunal's

determination confirmed, and the petition dismissed.

---

[4] In dissent, Judge Wilson expounds the historical antecedents to Tax Law § 1105 (c) (1), ultimately concluding that "personal or individual in nature" really means "custom" (Wilson, J., dissent op, at 27).  He fails, however, to anchor this conclusion to any authority explaining the meaning of that clause of the statutory exclusion.  Instead, his conclusion stems from a speculative analysis of the cited sources which relies on multiple layers of unsupported inferences to effectively rewrite "personal or individual" as "personalized or individualized."  While we of course recognize that, in appropriate circumstances, legislative history can be a useful tool in determining the legislature's intent, it is not illuminating in every case.  This is such a case, and we decline to follow the meandering path to nowhere laid down by Judge Wilson's interpretation of the legislative history.

Matter of Wegmans Food Mkts., Inc. v Tax Appeals Trib. of the State of N.Y.

No. 56

STEIN, J. (concurring):

Effectively overruling our landmark decision in Matter of Grace v New York State Tax Commn. (37 NY2d 193 [1975]), the majority today declares a new rule: in New York, the taxpayer always loses. Instead of confronting our four-decade-old precedent, the

majority states that the distinction we drew in Grace between tax exclusions and exemptions, for purposes of resolving any disagreement over the meaning of a tax statute, does not exist. I write separately to explain that this dramatic departure from our long-standing rule, which the majority refuses to acknowledge, is not only inconsistent with this Court's precedent, but also unnecessary to decide this case, which must be reversed in any event under the analytical framework set forth in Grace. Therefore, I concur with the majority in result alone.

## I.

In the decision on review in this CPLR article 78 proceeding, the Tax Appeals Tribunal stated that its "resolution of this dispute is guided by the rule of construction that requires exclusions from taxation to be strictly interpreted in the taxpayer's favor" (emphasis added). The Tribunal has applied that rule of construction for decades, in recognition that it is based on a proper interpretation of this Court's decision in Grace (see e.g. Matter of Exxon Mobil Corp., 2012 WL 1980652, *8, 2012 NY Tax LEXIS 43, *19 [NY St Div of Tax Appeals DTA No. 823437, May 24, 2012]; Matter of N.A.E., Inc., Gen. Partner, 1993 WL 491195, *16, 1993 NY Tax LEXIS 495, *42 [NY St Div of Tax Appeals DTA Nos. 810045, 810046, 810210, Nov. 18, 1993]; Matter of 1605 Bookcenter, Inc., 1990 WL 204903, *14, 1990 NY Tax LEXIS 216, *38-39 [NY St. Div of Tax appeals DTA No. 800121, May 17, 1990]; see Matter of Towne-Oller & Assoc. v State Tax Commn. (120 AD2d 873, 874 [3d Dept 1986] [citing Grace for the proposition that, "[w]here an exclusion from taxability is involved, it must be strictly construed in the taxpayer's favor"];

see also Westwood Pharms. v Chu, 164 AD2d 462, 465 [4th Dept 1990], lv denied 77

NY2d 807 [1991] [following Towne-Oller]).

Nevertheless, in the case presently before us, the Commissioner of Taxation and

Finance repudiates that rule of construction, arguing that it derives from a "formalistic

distinction" between exclusions and exemptions that this Court established in Grace. The

Commissioner argues that, in Matter of Mobil Oil v Finance Adm'r of City of N.Y. (58

NY2d 95, 99 [1983]), this Court overruled Grace sub silentio and held that the distinction

between exemptions and exclusions, which was concededly drawn by the Court in Grace,

has no force. Thus, the Commissioner maintains, "the Mobil Oil Court recognized" in

1983 that "both exemptions and exclusions should . . . be construed in favor of the

government and against the taxpayer." However, the Commissioner's argument is contrary

to the reading of Grace and Mobil Oil that both the courts and the Tribunal have employed

since the 1980s, and the majority goes even further than the Commissioner.

While the Commissioner argues that we should state that Mobil Oil overruled Grace

in holding that the distinction between exemptions and exclusions has no force – an

argument that is simply unsupported by the law – the majority simply denies that this Court

has ever differentiated between exemptions and exclusions in the first place (see majority

op, at 5-6), ignoring decades of administrative and judicial authority to the contrary. The

majority's reading of Grace is untenable.

In Grace, the Court explained:

> "It is often said . . . that '[a] statute which levies a tax is to be
> construed most strongly against the government and in favor
> of the citizen. The government takes nothing except what is

given by the clear import of the words used, and a well-founded doubt as to the meaning of the act defeats the tax' (People ex rel. Mutual Trust Co. v Miller, 177 NY 51, 57 [1903]; Matter of Voorhees v Bates, 308 NY 184, 188 [1954]; see Matter of American Cyanamid & Chem. Corp. v Joseph, 308 NY 259, 263 [1955]; American Locker Co. v City of New York, 308 NY 264, 269 [1955]; cf. Gould v Gould, 245 US 151, 153 [1917]). The principle is, however, applicable only in determining whether property, income, a transaction or event is subject to taxation. Thus, in each of the cases cited above, the issue was whether taxpayer's affairs were subject to the taxing statute at all (see People ex rel. Mutual Trust Co. v Miller, 177 NY 51, 53, supra [corporate franchise tax]; Matter of Voorhees v Bates, 308 NY 184, 187-188, supra [unincorporated business tax]; Matter of American Cyanamid & Chem. Corp. v Joseph, 308 NY 259, 262, supra [sales tax]; American Locker Co. v City of New York, 308 NY 264, 267, supra [sales tax]; Gould v Gould, 245 US 151, 153, supra [individual income tax]).

"When, however, it is undisputed that the taxpayer's income is subject to the taxing statute, but he claims an exemption from taxation, a different rule applies. An exemption from taxation 'must clearly appear, and the party claiming it must be able to point to some provision of law plainly giving the exemption' (People ex rel. Savings Bank of New London v Coleman, 135 NY 231, 234 [1892]; see Matter of Young v Bragalini, 3 NY2d 602, 605-606 [1958]). Indeed, if a statute or regulation authorizing an exemption is found, it will be 'construed against the taxpayer,' although the interpretation should not be so narrow and literal as to defeat its settled purpose (see Engle v Talarico, 33 NY2d 237, 240 [1973]; People ex rel. Watchtower Bible & Tract Soc. v Haring, 8 NY2d 350, 358 [1960]; People ex rel. Mizpah Lodge v Burke, 228 NY 245, 247-248 [1920]). This is because an exemption is not a matter of right, but is allowed only as a matter of legislative grace (cf., e.g., Colgate v Harvey, 296 US 404, 435 [1935]). A deduction is functionally a particularized species of exemption from taxation"

(37 NY2d at 196-197).

To be sure, Grace does not expressly state that ambiguities in statutory exclusions are interpreted in favor of the taxpayer.  It is also true that the Grace Court used the words "exemption" and "deduction," but did not use the word "exclusion," which is evidently the cause of the majority's confusion in this case.[1]  However, what the majority overlooks is that the precedent upon which the Court relied in Grace for the proposition that a statute levying a tax must be interpreted in favor of the taxpayer involves exclusions (see American Cyanamid, 308 NY 259 [exclusion from sales tax for resales]; Voorhees, 308 NY 184 [whether directing an orchestra for radio broadcasts fell within exclusion from definition of "unincorporated business"]).  Thus, both parties in the instant matter correctly acknowledge what has long been obvious to the bench and bar – in Grace, this Court distinguished between exemptions and exclusions for purposes of construing such provisions in tax statutes.

It bears emphasis that this Court repeated that distinction several years later in a case that majority also ignores, citing Grace for the proposition that statutory "exclusions" refer to properties "not covered because definitionally excepted," where as statutory "exemptions" refer to properties "which meet the statutory conditions precedent to regulation but are, as an act of legislative grace, nonetheless excepted" (La Guardia v Cavanaugh, 53 NY2d 67, 80 [1981]).  Moreover, the Division of Tax Appeals has

---

[1] The majority insists on writing the word "exclusion" into the Grace decision, inaccurately citing Grace for the proposition that "when the matter at issue 'is subject to the taxing statute,' but the question is whether taxation is negated by a statutory exclusion or exemption, 'a different rule applies'" (majority op, at 5, quoting Grace, 37 NY2d at 196). Grace explained that deductions are a species of exemption; it did not similarly categorize exclusions or mention them at all.

recognized for decades that <u>Grace</u> "discusses the differing burdens of proof for an exemption from tax, as opposed to that for an exclusion from tax" (<u>Matter of Katz</u>, 1994 WL 268115, *9, 1994 NY Tax LEXIS 318, *21 [NY St Div of Tax Appeals DTA No. 811673, June 9, 1994]; <u>see</u> <u>Matter of Dunham's Resort Corp.</u>, 2004 WL 2016219, * 7, 2004 NY Tax LEXIS 183, *16 [NY St Div of Tax Appeals DTA No. 819106, Sept. 2, 2004] [relying on <u>Grace</u> in explaining that "the burden of proof to show entitlement to an exemption . . . (or) an exclusion is placed upon petitioner, though the burden (for exclusions) is a lighter one because exclusions are strictly construed against the taxing authority"]; <u>Matter of 1605 Bookcenter, Inc.</u>, 1990 WL 204903, *11, *14, 1990 NY Tax LEXIS 216, *28, *38-39 [NY St. Div of Tax appeals DTA No. 800121, May 17, 1990] [noting that <u>Grace</u> provides both that exemptions are strictly construed against the party claiming the exemption and that exclusions must be construed strictly in favor of the taxpayer]).  Similarly, the Appellate Division has long recognized this Court's distinction between exemptions and exclusions in <u>Grace</u>, and required that statutory exclusions be construed in the taxpayer's favor (<u>see</u> <u>Matter of New York Life Ins. Co. v State Tax Commn.</u>, 80 AD2d 675, 676 [3d Dept 1981], <u>affd for reasons stated in App Div mem</u> 55 NY2d 758 [1981] [citing <u>Grace</u> for the proposition that "where, as here, an exclusion rather than an exemption is involved, the statute must be strictly construed in favor of the taxpayer"]; <u>Matter of Burger King v State Tax Commn.</u>, 70 AD2d 447, 450 [3d Dept 1979], <u>affd as mod</u> 51 NY2d 614 [1980] [same]; <u>see also</u> <u>Matter of United Artists Theatre Circuit, Inc. v State Tax Commn.</u>, 52 NY2d 1013, 1014 [1981], <u>revg</u> 76 AD2d 995, 996 * [3d Dept 1980] [reversing "essentially for reasons stated in Presiding Justice A. Franklin Mahoney's

dissenting opinion at the Appellate Division;" that dissenting opinion relied on <u>Grace</u> in concluding that exclusions, unlike exemptions, must be construed in the taxpayer's favor]). In light of this jurisprudential history – now ironically dismissed by the majority as "revisionist analysis that ignores our case law" (majority op, at 7) – it is simply disingenuous to fail to acknowledge that <u>Grace</u> drew a distinction between exemptions and exclusions for purposes of statutory construction, requiring that exemptions be construed in favor of the government, but that exclusions be construed in favor of the taxpayer.

The majority's failure to acknowledge the distinction drawn in <u>Grace</u> appears to be rooted in an attempt to emulate federal law in interpreting our state tax statutes (<u>see</u> majority op, at 6 n 2). The majority relies upon <u>Mobil Oil</u>, which the Commissioner argues overturned <u>Grace</u>. In <u>Mobil Oil</u>, the Court stated – without further discussion – that "[w]hile it is the general rule that a statute which levies a tax is to be construed most strongly against the government and in favor of the taxpayer, the rule is otherwise with respect to the taxpayers' right to exclude items from taxation. In the case of statutory exclusions, the presumption is in favor of the taxing power" (58 NY2d at 99 [internal citation omitted]). The <u>Mobil Oil</u> Court did not expressly overrule <u>Grace</u> and, inasmuch as "[w]e do not overrule important authorities sub silentio" (<u>Pratt Inst. v City of New York</u>, 183 NY 151, 161 [1905]), <u>Mobil Oil</u> should not be read as doing so.

In fact, the decision in <u>Mobil Oil</u> did not even cite <u>Grace</u>; rather, the Court relied upon <u>Matter of Schwartzman</u> (262 App Div 635, 636 [3d Dept 1941], <u>affd no opn</u> 288 NY 568 [1942]), a case involving an <u>exemption</u>, not an exclusion. The Court of Appeals decision in <u>Schwartzman</u> simply affirmed, without opinion, a decision of the Appellate

Division, Third Department. However, as explained above, the rule in the Third Department – prior to Mobil Oil and based upon our case law – was that, "while the taxpayer ordinarily must bear the burden of overcoming a tax assessment, where . . . an exclusion rather than an exemption is involved, the statute must be strictly construed in favor of the taxpayer" (New York Life Ins., 80 AD2d at 676; see Burger King, 70 AD2d at 450). Thus, when the Third Department decided Fairland Amusements v State Tax Commn. (110 AD2d 952 [3d Dept 1985], revd 66 NY2d 932 [1985]) shortly after Mobil Oil was handed down, it is not surprising that a dissenting opinion, in challenging the interpretation of an exclusion in favor of the government, stated the well-settled rule that, "in determining if there is an exclusion under the Tax Law, any ambiguities in the tax statute must be construed most strongly in favor of the taxpayer and against the government" (id. at 954 [Mikoll, J. dissenting]). Nor is it surprising that this Court expressly agreed with the dissent in Fairland and reiterated our long-standing rule in interpreting the statutory language – providing for an exclusion – in favor of the taxpayer, stating "[w]e agree with the dissenters below that there is an ambiguity in the statutory scheme which must be construed most strongly in favor of the taxpayer and against the government" (Fairland, 66 NY2d at 934). Thus, contrary to the majority's conclusion, Fairland supports Wegmans' argument that the statement in Mobil Oil was a syntactical error – the result of the Court using imprecise language in describing exclusions versus exemptions, as the Third Department correctly recognized six months after Fairland

reiterated the rule as set forth in Grace (see Towne-Oller, 120 AD2d at 874 n).[2]  In any event, even absent Fairland, Mobil Oil – based on a misreading of Appellate Division precedent and failing to cite Grace – cannot be read as overruling Grace sub silentio. Therefore, the rule remains that, in determining entitlement to a tax exclusion, tax statutes are "to be construed most strongly against the government and in favor of the citizen," but "if a statute or regulation authorizing an exemption is found, it will be construed against the taxpayer" (Grace, 37 NY2d at 196).

II.

That said, I agree with the majority that reversal is required here.  Wegmans concedes that, as the taxpayer, it bears the ultimate burden to establish its entitlement to the tax exclusion at issue.  Moreover, the Tribunal's determination must be upheld unless shown to be irrational (see Matter of 677 New Loudon Corp. v State of N.Y. Tax Appeals Trib., 19 NY3d 1058, 1060 [2012], cert denied 571 US 952 [2013]; Grace, 37 NY2d at 195-196).  Thus, "[i]f there are any facts or reasonable inferences from the facts to sustain

---

[2] The majority's attempt to distinguish Fairland fails.  The question in Fairland was whether the sales of tickets for the plaintiff's portable amusement rides were definitionally excluded from taxation because the site where the rides were located was not a "place of amusement" as defined by Tax Law § 1101 (d) (10) (110 AD2d at 953).  In other words, the question was whether the rides were "not covered because definitionally excepted" and, thus, an "exclusion" applied (La Guardia, 53 NY2d at 80).  To the extent that this Court's subsequent decisions in Matter of Charter Dev. Co., L.L.C. v City of Buffalo (6 NY3d 578, 582 [2006]) and Matter of 677 New Loudon Corp. v State of N.Y. Tax Appeals Trib. (19 NY3d 1058, 1060 [2012], cert denied 571 US 952 [2013]) used the terms exclusions and exemptions interchangeably, both of those cases involved exemptions (see Matter of HDV Manhattan LLC v Tax Appeals Trib. of the State of N.Y., 156 AD3d 963, 967 & n 4 [3d Dept 2017]); thus, the Court was applying the traditional rule that ambiguities in tax statutes providing for exemptions must be resolved in favor of the government.

it, the court must confirm the . . . determination" (Grace, 37 NY2d at 195). Even if any ambiguity in the statutory exclusion at issue is construed against the government – as the Tribunal did here, applying the traditional rule – Wegmans has failed to demonstrate that the Tribunal's interpretation is unreasonable. Accordingly, I agree that the information furnished cannot be deemed "personal or individual in nature" within the meaning of Tax Law § 1105 (c) (1) (Matter of ADP Automotive Claims Servs. v Tax Appeals Trib., 188 AD2d 245, 248 [3d Dept 1993], lv denied 82 NY2d 655 [1993]).

I reiterate that the new rule pronounced by the majority here – namely, that statutory exclusions must be construed against the taxpayer – is inconsistent with our precedent. Significantly, however, I note that even the majority does not contend that it is necessary to construe section 1105 (c) (1)'s exclusion against the taxpayer in order to reach the result that it does. Therefore, I am also compelled to emphasize that the majority's statements regarding statutory construction are, in fact, dicta. The majority's declaration that New York taxpayers are now deprived of a protection they have long enjoyed – in a misguided attempt to resolve confusion in the lower courts that never existed – is not only wrong, but completely unnecessary.

Matter of Wegmans Food Mkts., Inc. v Tax Appeals Trib. of the State of N.Y.

No. 56

FAHEY, J. (dissenting):

I respectfully dissent. The key question on this appeal is the distinction in the interpretation of tax exclusions and tax exemptions. For decades the Appellate Division has correctly analyzed this area of law in holding that an exclusion should be interpreted

in favor of the taxpayer (see Matter of New York Life Ins. Co. v State Tax Commn., 80 AD2d 675, 676 [3d Dept 1981] ["where . . . an exclusion rather than an exemption is involved, the (tax) statute must be strictly construed in favor of the taxpayer"], affd for reasons stated 55 NY2d 758 [1981]; Matter of Burger King v State Tax Commn., 70 AD2d 447, 450 [3d Dept 1979] [holding that an exclusion from taxation is "to be strictly construed in favor of the taxpayer"], affd as mod 51 NY2d 614 [1980]; see also Matter of United Artists Theatre Circuit v State Tax Commn., 52 NY2d 1013, 1014 [1981], revg 76 AD2d 995, 996 [3d Dept 1980]; see generally Matter of Grace v New York State Tax Commn., 37 NY2d 193, 196 [1975]).  I agree with the Appellate Division order in this case, and I adopt both its holding and its reasoning as my own.

Matter of Wegmans Food Mkts., Inc. v Tax Appeals Trib. of the State of N.Y.

No. 56

WILSON, J. (dissenting):

If there is any fixed star in our statutory construction constellation, it is that "the primary consideration of courts in interpreting a statute is to ascertain and give effect to the intention of the Legislature" (Riley v County of Broome, 95 NY2d 455, 463 [2000]).

- 1 -

We announced that principle as early as 1855 (Corwin v New York & E.R. Co., 13 NY 42, 48 [1855]), reiterated it earlier this month (Nadkos v Preferred Constr. Ins. Co. Risk Retention Group LLC, 2019 NY Slip Op 04641 [Ct Apps June 11, 2019]), and repeatedly reasserted it in the intervening years (McKinney's Cons Laws of NY, Book 1, Statutes § 92 [a] [collecting cases]). Nevertheless, neither the Tax Appeals Tribunal, nor any appellate court—including the majority in this case—has attempted to determine with the usual tools of statutory interpretation what the legislature meant by the words "personal or individual" in Tax Law § 1105(c)(1), the tax exclusion now before us.

Without attempting to discern the legislature's meaning, the majority upholds the Tribunal's determination that the grocery price reports at issue here, "CPAs," are "not personal or individual in nature because [they were] collected from prices on supermarket shelves, which are publicly available, widely-accessible, and not confidential" (majority op at 9). I disagree. The statute says nothing about the confidentiality or public availability of the information. It would have been simple enough for the legislature to have written "confidential"; it did not do so.

The Appellate Division unanimously held that "to expand the interpretation of Tax Law § 1105 (c) (1) to allow for the Tribunal's denial of the subject tax exclusion based solely on the fact that the information ultimately furnished derived from a public source would, under the circumstances presented, serve to defeat the purpose of the exclusion" (Matter of Wegmans Food Mkts., Inc. v Tax Appeals Tribunal, 155 AD3d 1352, 1357 [3d Dept 2018]). I agree. But the Appellate Division, too, failed to conduct any real

investigation into what the legislature meant when it used the words "personal or individual."

Instead, the lower courts and the Tax Appeals Tribunal reached their decisions principally by relying upon their own prior cases, cherry-picked to avoid others that are inconsistent. Not one of those cases attempted to determine the legislature's meaning when it enacted Tax Law § 1105(c). Cut loose from the usual anchor to text, structure, and history, the lower courts and the Tribunal have incorporated varying and inconsistent interpretations of the exclusion based, in part, on considerations anathema to the statutory scheme, properly understood.

I agree with the majority that the prior decisions of the Appellate Division (two of which were summarily affirmed by our Court) have not clarified the statute's meaning. Despite that recognition, the majority absolves itself of our duty to "give effect to the intention of the legislature" and resolve the pure question of statutory interpretation presented here. Instead, the majority assumes the soundness of the Tax Appeals Tribunal's interpretation, pausing only to dispense pure *obiter dicta* denigrating a 40-year-old principle of statutory interpretation distinguishing tax exemptions from tax exclusions.

Our charge is to determine the statute's meaning. I have attempted to do so, by reviewing all of the materials pertinent to statutory interpretation, including text, structure, legislative history, and relevant underlying presumptions. So armed, I conclude that the exclusion here operates quite differently from the way the Tribunal has interpreted it, such that the Tribunal's decision must be annulled.

**I**

The Tax Appeals Tribunal is the agency charged with the administration of the tax statutes. "Where the interpretation of a statute or its application involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom, the courts regularly defer to the governmental agency charged with the responsibility for administration of the statute. If its interpretation is not irrational or unreasonable, it will be upheld" (Colt Indus., Inc. v New York City Dept. of Fin., 66 NY2d 466, 470-471 [1985] [quoting Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459 (1980)]).

Our deference to the Tribunal has an important, foundational limit: "where the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency. In such a case, courts are free to ascertain the proper interpretation from the statutory language and legislative intent" (International Union of Painters & Allied Trades v New York State Dept. of Labor, 32 NY3d 198, 209 [2018] [quoting Seittelman v Sabol, 91 NY2d 618, 625 (1998)]). To know whether the Tax Appeals Tribunal's interpretation of the statute is rational or reasonable, we must first know what the statute means. Otherwise, deference would mean the unbounded authority of an administrative agency to make law—a usurpation of the legislative function (NY Const, art III § 1). Indeed, "the interpretation of the laws is the proper and peculiar province of the courts" (The Federalist No. 78 [Alexander Hamilton]).

How, then, do we "ascertain and give effect to the intention of the Legislature" (Riley, 95 NY2d at 463)? "We begin with the plain language of the statute, which is the clearest indicator of legislative intent" (T-Mobile Northeast, LLC v DeBellis, 32 NY3d 594, 607 [2018]). That "plain text" analysis incorporates all of the tools we use to make sense of text—the "plain meaning" of the words (DaimlerChrysler Corp. v Spitzer, 7 NY3d 653, 660 [2006]), construing "words of ordinary import with their usual and commonly understood meaning" (Yaniveth R. v. LTD Realty Co., 27 NY3d 186, 192 [2016] [quoting Rosner v. Metropolitan Prop. & Liab. Ins. Co., 96 NY2d 475, 479–480 (2001)]), considering semantic canons of construction (see Matter of Kese Indus. v Roslyn Torah Found., 15 NY3d 485, 491 [2010]), as well as the surrounding words (see Lemma v Nassau County Police Officer Indem. Bd., 31 NY3d 523, 528 [2018]) and the larger statutory structure (see Albany Law School v New York State Off. of Mental Retardation and Dev. Disabilities, 19 NY3d 106, 120 [2012]).

In addition to the plain language of the statute, "inquiry should be made into the spirit and purpose of the legislation, which requires examination of the statutory context of the provision as well as its legislative history" (Nostrom v A.W. Chesterton Co., 15 NY3d 502, 507 [2010] [quoting ATM One, LLC v Landaverde, 2 NY3d 472, 477 (2004)]). The question of "pure statutory reading and analysis," as to which we afford agencies no deference, includes "construction based on its legislative history" (Painters, 32 NY3d at 209). Thus, in Matter of Liquidation of Union Indem. Ins. Co. of New York (92 NY2d 107, 124 [1998]), we explained that when the case presented questions requiring "examination

of various statutory provisions contained in articles 74 and 76 of the Insurance Law, the

legislative history of these provisions, and case precedent," the questions remained "ones

of pure statutory reading and analysis, dependent only on accurate apprehension of

legislative intent [such that] no justification for judicial deference to the [agency's]

interpretations is warranted" (id. at 124).

Our precedents do not definitively establish any hierarchy among these several tools

of statutory interpretation—that is, whether some cannot be resorted to when others on

their own may resolve the ambiguities in the statute sufficient to decide the case (see

generally Adam Samaha, *If the Text is Clear—Lexical Ordering in Statutory

Interpretation*, 94 Notre Dame L Rev 155 [2018]).[1] Our cases are clear, however, that when

engaging in "pure statutory reading and analysis" we are obliged to use all the tools of the

judicial trade to "accurate[ly] apprehend[d] . . . legislative intent" before considering

whether to defer to an agency's interpretation of a statute (Kurcsics v Merchants Mut. Ins.

---

[1] Compare Kimmel v State, 29 NY3d 386, 408 (2017) ("It is appropriate to consider legislative history even where a statute's plain meaning is clear"); T-Mobile, 32 NY3d at 609 (considering legislative history even after concluding that the "plain language" of the tax statute at issue in that case encompassed the subject property); and Fumarelli v Marsam Dev., Inc., 92 NY2d 298, 307 (1998) (rejecting employment of "overly general and self-canceling canons of construction" in favor of legislative history); with Anonymous v Molik, 32 NY3d 30, 37-41 (2018) (claiming that resort may be had to legislative history only if the language is ambiguous or literal construction would lead to unreasonable consequences contrary to the purpose of the enactment, but although resolving the case mostly on the basis of the presumption against surplusage, nonetheless considering legislative history); Auerbach v Board of Educ. of City School Dist. of City of New York, 86 NY2d 198, 204 (1995) (same, although less clearly resting on legislative history). Here, the admittedly ambiguous statutory text means that we must examine legislative history no matter which side of this debate one takes.

Co., 49 NY2d 451, 459 [1980]; see also Matter of Dental Socy. v Carey, 61 NY2d 330, 335 [1984] ["Whether administrative action violates applicable statutes and regulations is a question within the traditional competence of the courts to decide"]).

Courts should defer to an agency's statutory interpretation (if not irrational or unreasonable) only after employing all of the tools of statutory interpretation, because only at that point will the agency's "special competence or expertise" be needed to apply the statute within the bounds of the judicially-determined statutory meaning (Painters, 32 NY3d at 209). Once the courts have interpreted the statute as best they can, "the judicial function is exhausted" as a descriptive matter, as well as a matter of doctrine (Howard v Wyman, 28 NY2d 434, 438 [1971]). Although there are many cases in which we have deferred to an agency's expertise after we have construed a statute, those should not be mistaken for a rule requiring deference to every agency construction of the legislature's acts unless it reaches the point of irrationality. It would be an error of constitutional dimension for us to delegate our statutory construction role to any agency under the guise of deference. Doing so would empower agencies to do via interpretation what the legislature did not do via legislation (see generally LeadingAge New York, Inc. v Shah, 32 NY3d 249 [2018]).

The majority skips past the legislature's intent.[2] Ignoring the numerous cases in which we insisted on engaging in statutory interpretation before turning to agency

---

[2] The majority has not even applied its rule of deference consistently. It defers to the Tax Appeals Tribunal's construction of section 1105 (c) (1) – which is our job – but overrules the Tax Appeals Tribunal's application of "the rule of construction that requires exclusions

deference—including our unanimous decision last month (<u>National Energy Marketers</u> <u>Assn</u>, 2019 NY Slip Op 03655 at 4 n 5 [Ct App May 9, 2019])—the majority jumps right to "whether the Tribunal rationally determined that those information services were not excluded from the sales tax" (majority op at 9). But rationality must be measured against the legislature's action; if not, against what are we measuring it? The first and most important question before us is what the statute means, or at least our best understanding of what the statute includes or excludes; we ask whether the agency's interpretation is acceptable only once we have measured the metes and bounds of the range of statutory meanings ourselves.[3] I therefore turn to the question the majority avoids: what does Tax Law § 1105(c)(1)'s exclusion mean?

## II

Tax Law § 1105 (c) (1) imposes sales tax on (emphasis added):

> (c) The receipts from every sale, except for resale, of the following services:

> (1) The furnishing of information by printed, mimeographed or multigraphed matter or by duplicating written or printed matter in any other manner, including the services of collecting, compiling or analyzing information of any kind or nature and furnishing reports thereof to other persons, *but excluding the*

---

from taxation to be strictly interpreted in the taxpayer's favor" (Tribunal Decision at 13) – which is arguably the Tribunal's job.

[3] The majority's inattention to the statute's meaning is particularly worrisome because this is our first encounter with the exclusion language in Tax Law § 1105 (c) (1), setting aside our opinion-less affirmances of Appellate Division decisions in <u>New York Life Ins. Co. v State Tax Commn</u>. (80 AD2d 675, 676 [3d Dept 1981], <u>affd sub nom.</u> <u>Metro. Life Ins. Co. v Tax Commn. of State</u>, 55 NY2d 758 [1981]) and <u>Allstate Ins. Co. v Tax Commn. of State of NY</u> (115 AD2d 831 [3d Dept 1985], <u>affd</u> 67 NY2d 999 [1986]).

> *furnishing of information which is personal or individual in nature and which is not or may not be substantially incorporated in reports furnished to other persons*, and excluding the services of advertising or other agents, or other persons acting in a representative capacity, and information services used by newspapers, electronic news services, radio broadcasters and television broadcasters in the collection and dissemination of news, and excluding meteorological services.

All agree that the services at issue in this appeal fall into the general taxing clause; RetailData is in the business of "collecting, compiling, or analyzing information of any kind of nature and furnishing reports thereof to other persons" (see Audell Petroleum Corp. v New York State Tax Commn., 69 NY2d 818, 819-820 [1987] ["sale of the service of furnishing information by a business whose function it is to collect and disseminate information" is taxable under this subsection]). The question is what information services fall into the first of the subsection's exclusions: "excluding the furnishing of information which is personal or individual in nature and which is not or may not be substantially incorporated in reports furnished to other persons."

Read alone, the text of the "personal or individual exclusion" is susceptible of several meanings. The phrase "that is personal or individual in nature" could either modify the noun "information" (i.e. the *information* must be "personal or individual in nature") or the present participle phrase "furnishing of information" (i.e. "the *furnishing*" of the information must be "personal or individual in nature"). Likewise, the second clause of the exclusion ("reports furnished to other persons") could refer, on the face of the text, to the specific information "furnished" to the first party (the specific data must not be sold to a third party or commoditized), or to the nature of the information furnished (the report or

other tangible output representing the service may not be of the type that can be sold to a third party or commoditized). Indeed, it is not clear whether the second clause of the exclusion is disjunctive—that is, certain activities might fall into the "personal or individual" prong only to be thrown out by the "reports to other persons" prong—or part of a single integrated definition, helping to define what "personal or individual" means.

The remaining words in the clause are of limited help. The advertising exclusion clearly would reach, for example, brochures providing information about canned tuna to a wide audience (which all agree would not be subject to the exclusion because the "reports" would be available to all sorts of persons). The newsgathering exclusions reinforce the general exemption of newspapers and related services from sales taxation (Tax Law § 1115 [a] [5]). "The services . . . of persons acting in a representative capacity" is as unclear on its face as the exclusion before us.[4]

To decide this case, we must resolve the ambiguity on the face of the statute. If "personal or individual" refers to the nature of the services provided, the CPAs qualify for the exclusion: they were custom-created for Wegmans, built on observations of the world and compiled into a report only Wegmans could read, containing precisely and exclusively the information Wegmans specified. If, by contrast, "personal or individual" refers to the source of the information provided, it is likely that, as the majority explains, the CPAs,

---

[4] The remaining clauses of Tax Law § 1105(c) are of little assistance, because none speaks to services that can be considered—even generously—to be "information services" of the type captured by subsection (c)(1); indeed subsection (c)(9) expressly excludes whatever was taxable under (c)(1) from its scope.

drawing as they do on commonly-available, public information on grocery store prices, likely do not fall into the exclusion.

## A

The majority chooses the latter statutory interpretation by throwing up its hands, declaring the Tribunal's determination not unreasonable, and citing—as it is heading out the door—two Appellate Division cases (Matter of ADP Automotive Claims Servs. v Tax Appeals Trib., 188 AD2d 245, 248 [3d Dept 1993]; Matter of Rich Prods. Corp. v Chu, 132 AD2d 175, 177-178 [3d Dept 1987]) that ostensibly support its position. Those cases, however, do not examine the legislative or statutory history of the "personal or individual" exclusion, and do not themselves rely on any other decisions that do. Instead, each cites to a daisy chain of cases, ultimately resting on nothing at all.

ADP Automotive relies for its interpretation of the exclusion on Towne-Oller and Assoc., Inc. v State Tax Commn. (120 AD2d 873, 874 [3d Dept 1986]) and Rich Prods. Towne-Oller rests its reasoning solely on New York Life Ins. Co. v State Tax Commn., 80 AD2d 675, 678 [3d Dept 1981], affd sub nom. Metro. Life Ins. Co. v State Tax Commn. of State, 55 NY2d 758 [1981]), which found—correctly—that a private detective agency's writing of individualized reports on particular persons for individual clients fell into the exclusion. Although New York Life involved the gathering of some information that was substantially less public than supermarket prices, the Appellate Division's holding rested not on the nature of the information collected, but on the customized nature of the reports delivered: "the primary basis of the report[] is tailored in each instance to the particular

specifications as promulgated by the petitioner company in its request. It is somewhat difficult to imagine how any information could be more personal or individual" (80 AD2d at 677).[5]

Rich Prods. held that customization of reports "in some respects to respond to the needs of the particular client is not dispositive of entitlement to the exclusion, particularly where, as here, the information contained therein is derived from a single data repository which itself is not confidential and is widely accessible." The court in Rich Prods. conducted no investigation into the meaning of "personal or individual," instead explaining that "[t]o rule otherwise would be inconsistent with Towne-Oller, New York Life, Allstate Ins. Co. v Tax Commn. of State of N.Y. (115 AD2d 831, 834 [3d Dept 1985], affd sub nom. Allstate Ins. Co. v Tax Commn., 67 NY2d 999 [1986]) and Twin Coast Newspapers, Inc. v State Tax Commn. (101 AD2d 977 [3d Dept 1984]).

Twin Coast concerned a publisher of a weekly import and export bulletin, widely distributed, who permitted subscribers to purchase excerpts of those bulletins by specifying which portions they wanted to receive. Twin Coast contained no examination of the legislature's intent, and its holding is a straightforward application of the statutory language "is not or may not be substantially incorporated in reports furnished to other persons," because the excerpts were merely copies of portions of the (taxable) bulletins.

---

[5] New York Life made the additional observation that the Tribunal's interpretations of section 1105 (c) (1) exhibited "vacillation, inconsistency and obvious doubt concerning the [Tribunal's] own interpretation of the statute" (id. at 678).

Allstate Ins. Co. v Tax Commn. of State of NY (115 AD2d 831 [3d Dept 1985],

affd 67 NY2d 999 [1986]), was decided solely on the ground that a declaratory judgment

action was not the proper vehicle to challenge the imposition of tax. Although the opinion

states that section 1105 (c) (1) "does not apply to information filed with a governmental

agency as a public record to which there is unlimited public access," that statement is dicta

(cf. People v Onofre, 51 NY2d 476, 493 [1980] [noting the "limited precedential value of

a summary affirmance"]; Mandel v Bradley, 432 US 173, 176 [1977] ["a summary

affirmance is an affirmance of the judgment only . . . not necessarily the reasoning by which

it was reached"]). I also note that Allstate itself relied only on two cases: New York Life,

which cuts against the Tribunal's position, and Twin Coast Newspapers. In sum, the two

cases on which the majority relies turn out to be turtles all the way down, lacking any

grounding in legislative intent.

Oddly, the parties and the majority fail to mention the one decision of our Court that

bears on whether "personal or individual" should be read as relating to the information

contained in the report (i.e., are the items of information in the report ones we would call

"personal" or "individual") or, instead, as relating to the information service provided (i.e.,

was the service provided "personal" or "individual" to the recipient). In Audell, we held

that the tax levied under section 1105 (c) (1) was levied on the service, not the information:

"As the statute and the implementing regulations indicate, it is the sale of the service of

furnishing information by a business whose function it is to collect and disseminate

information which is taxable under Tax Law § 1105 (c) (1) and not the mere sale of

information" (69 NY2d at 819-20). It would be incongruous, absent legislative direction to the contrary, to read the exclusion to concern the "personal or individual" character of the underlying information when we have held that the tax itself is imposed on the service provided to the client, not the underlying information.

**B**

The legislative history, ignored by the majority, makes the meaning of the personal or individual exclusion clear: "personal or individual" was meant to distinguish generic information services from customized ones.[6]

Save for a brief period in 1933, New York had no statewide sales tax until 1965, when it was enacted as part of Governor Rockefeller's Executive Budget for that year. The information services tax and the exclusion were both part of that original statewide sales tax (L 1965, Ch 93, § 1); indeed, the text of the present Tax Law § 1105(c)(1) is identical to that adopted in 1965, with the exception of the additional exclusion for "meteorological services" adopted by the legislature (L 1995, Ch 373) to overturn a contrary Tax Appeals Tribunal holding made some decades later (see Governor's Message, Bill Jacket at 5, L 1995 Ch 373).

---

[6] Although the majority characterizes my conclusion that "personal or individual" means "custom" as "speculative," "unsupported" and "meandering," that conclusion turns on the answer to a very straightforward question: was "personal and individual" meant modify the *service* or the *information*? Every bit of the legislative history, as well as our decision in Audell, points to the former, not the latter. A service that is "personal" or "individual" is specific to a customer, i.e., custom.

The statewide sales tax did not emerge, like Botticelli's Venus, fully-formed from the Governor's budget submission. Instead, the Governor's proposal was built on the foundation of the existing sales taxes levied by localities. Except for a one-off, one-year one-percent sales tax imposed in 1933 (see Robert B. Ward, *New York State Government* [2d Ed, 2006]), all prior sales taxes in the State had been levied by local governments pursuant to general legislative authorization—originally limited to New York City (L 1934, Ch 873), but eventually extended to other local governments (L 1954, Ch 278). All contemporaneous discussion of the state's 1965 tax law, as well as the parties' arguments about the legislative history of the information services tax, begins from the understanding that the information services sales tax was based on the prevailing sales tax on information services imposed by New York City.[7]

In 1965, New York City's information services tax local law read as follows (NYC Admin Code § N46-2.0 [5-a] [adopted by LL 1952, No. 78, July 1]):

> "[The City imposes a] tax of three per cent upon the receipts
> from every sale of information services involving the
> furnishing of printed, mimeographed, multigraphed matter or

---

[7] The Governor's 1965 Budget Message is circumspect about the source of the proposed sales tax act's language, but makes plain that the purpose of the statewide tax is to harmonize local sales taxes (and adjusts other tax revenue flows to compensate New York City for a mandated one-point reduction in the city's sales tax). The Legislative Annual for L 1965, Ch 93 makes it clear that the statewide sales tax was constructed by looking to the existing localities' laws and drawing into its text taxing clauses from local laws (New York State Legislative Annual 1965, at 432-435); the Annual also explains that services that were then taxed by New York City, including "information services," which were not taxed by other localities, would be part of the broader tax base (id., see also Marilyn Rubin, *A Guide to New York State Taxes* at 31 [2011], http://pjsc.magikcms.com/Tax%20guides/StateGuideWeb.pdf [state uniform tax based on NYC sales taxes as they stood in 1965]).

matter duplicating written or printed matter in any other manner, other than professional services and services of employees, agents or other persons acting in a representative or fiduciary capacity or information services furnished to newspapers. Information services" shall mean and include the services of collecting. compiling or analyzing information of any kind or nature and furnishing reports thereof to other persons."

Large sections of that language are nearly word-for-word identical to the language that became Tax Law 1105(c)(1), once one transposes the definition section to the same place in the statute:

| L 1965 Ch 93 (Statewide) | Admin Code § N46-2.0 (NYC) |
|---|---|
| The furnishing of information by printed, mimeographed or multigraphed matter or by duplicating written or printed matter in any other manner, including the services of collecting, compiling or analyzing information of any kind or nature and furnishing reports thereof to other persons, but excluding the furnishing of information which is personal or individual in nature and which is not or may not be substantially incorporated in reports furnished to other persons, and excluding the services of advertising or other agents, or other persons acting in a representative capacity, and information services used by newspapers, electronic news services, radio broadcasters and television broadcasters in the collection and dissemination of news | …information services involving the furnishing of printed, mimeographed, multigraphed matter or matter duplicating written or printed matter in any other manner [includ[ing] the services of collecting. compiling or analyzing information of any kind or nature and furnishing reports thereof to other persons], other than professional services and services of employees, agents or other persons acting in a representative or fiduciary capacity or information services furnished to newspapers. |

There is one significant variation between the State and City information services taxes: the City law excludes "professional services" from taxation, whereas the State language substitutes the phrase "personal or individual services." As it turns out, it was the

New York City tax regulations (not a local law approved by the City Council) that provided

the "personal or individual" language that wound up in section 1105(c). The regulation is

worth quoting at some length (N.Y. City Department of Finance Regulations, Sales and

Compensating Use Taxes [11 RCNY] art 98 [1964]):

> "Effective July 1, 1952, a tax is imposed upon the receipts from every sale or use of information services involving the furnishing of printed, typewritten, written, mimeographed, multigraphed matter or matter duplicating written or printed matter in any other manner, other than professional services and services of employees, agents, or other persons acting in a representative or fiduciary capacity, or information services furnished to newspapers.
>
> "Information services" means and includes the services of collecting, compiling, and analyzing information of any kind or nature, and furnishing reports thereof to other persons. Included in but not limited to the type of information services that are subject to the tax are the services of furnishing credit information, statistical information, building and construction information, stock market analyses, and advisory services information, advertising surveys, radio and television surveys, racing and other sports information, tax information, and numerous other services involving the collecting, compiling, or analyzing of information of any kind or nature and furnishing reports thereof to other persons.
>
> . . . The furnishing of information, including a written report, to a person which is personal or individual in nature and which is not or may not be substantially incorporated in reports furnished to other persons is not deemed to be an information service within the meaning of the law, and is not subject to the tax. In such case, the person furnishing the information is required to pay the tax on the purchases of tangible personal property used by him in connection therewith.
>
> To illustrate: (1) an investment counselor who examines and analyzes the investment needs of a particular client and who renders a report recommending a portfolio of services for

investment by such client is not deemed to be furnishing information services. (2) A private detective agency which makes a special investigation at the request of another and renders a report of such investigation is not deemed to be furnishing information services."

The New York City regulation, read in conjunction with the local law it was interpreting, makes clear that the "personal or individual" phrase was meant to broaden the City's exclusion for "professional services" (the services of "agents" being captured in a separate exclusion). The legislature in 1965 followed suit by adopting the broader "personal or individual" language of the City's regulation instead of using the "professional services" language from the New York City local law.

The claim that the State aimed to copy the City regulation language to capture and define "professional services" is bolstered by the Legislative Annual, which explained that "despite [the] broad tax base [of the statewide law], many sales of property and services would not be taxable under this bill. In addition to the specific exclusions set forth above, *professional*, fiduciary, *consulting*, advertising and transportation services would not be taxable" (New York State Legislative Annual 1965, at 433). The "personal or individual" exclusion is the only provision of the 1965 tax law that could possibly be construed to capture "professional" or "consulting" services—indeed, the only use of the word "professional" in the text of the 1965 statewide sales tax law relates to circus performers

(Tax Law § 1116 [c] [2] [B]), which, despite shenanigans at firm holiday parties, cannot encompass the entire class of professionals in New York State.[8]

Because the state legislature took the New York City information tax and applied it statewide, I next examine the legislative history of the New York City information tax. The New York City local law that adopted the information services tax (LL 1952, No. 78, July 1), was an attempt to regulate information services whose published reports had been excluded from the existing tax on retail sales of personal property by a landmark decision of this Court: Dun & Bradstreet, Inc. v City of New York (276 NY 198 [1937]). There, New York City sought to tax a "mercantile agency which furnishes to its subscribers information respecting the financial standing of persons engaged in business" compiled in reference books (id. at 202). The City reasoned that the books were goods, and thus were subject to the City's "tax on the sale of tangible personal property." We disagreed, in part because the City's sales tax included a specific section for services and in that section taxed only certain utility services (implying that all other services were excluded from taxation),

---

[8] That the state legislature chose to use the regulation's "personal or individual" gloss on the word "professional" and not the NYC tax language "professional" can be explained by the State's relative freedom, compared to the City, to broaden the exclusion. The enabling act permitting New York City to impose sales taxes between 1934 and 1965 incorporated a substantive ban on New York City taxation of professional services—a ban reflected in the Admin Code N46-2.0(5-a) language (see Glushak v City of New York, 6 AD2d 381, 384 [1st Dept 1958]). However, the courts—including this Court—read "professional" narrowly, encompassing only a small set of licensed professionals (see e.g., Voorhees v Bates, 308 NY 184, 188 [1954]). The legislature's adoption, in the statewide taxation law, of the regulation's language rather than the local law language evidences its decision that the exclusion from taxation would not be limited to information services provided by licensed professionals, but would extend to information services provided by professionals in a much more generic sense (i.e., "white collar work").

and in part because information services that generated personal property did not constitute

the sale of personal property (id. at 204-205):

> "It is true that in rendering services to its subscribers, it delivers to them reference books, the title of which remains in appellant, but the subscribers are expressly forbidden to let any one else see or use such books and they are notified not to rely upon the ratings given in the books but in all cases when extending credit to consult the detailed reports in the possession of appellant.
>
> No charge is made to the subscribers for the use of the reference books separate and apart from the charge for services rendered and the books cannot be obtained in any other way. The information furnished to subscribers orally, in typewriting and in the reference books is confidential and personal in character. It is not and cannot be, under the subscription contracts, disclosed to the public.
>
> The information collected by appellant at great expense is secured to enable it to furnish to its subscribers detail information to guide them in making sales and in extending credit. The information furnished is of value to the subscribers and for it they pay but not for the paper upon which the information is conveyed or for the reference books which are only guides to assist in the rendition of appellant's service. One does not think of a telephone company as a seller of books to its subscribers. It renders a service. To make that service efficient, it furnishes its subscribers with books containing a list of its subscribers with their call numbers. 'The paper is a mere incident; the skilled service is that which is required.'"

The intent of the 1952 law, then, was to tax the "information services" that the Court

excluded from taxation in Dun & Bradstreet, even though those services provided

information that, because of a contractual provision preventing the subscriber from sharing

the contents of the books, was "confidential and personal in character" (id. at 205).

Conversely, the example given in the City's regulation of "an investment counselor who

examines and analyzes the investment needs of a particular client and who renders a report recommending a portfolio of services for investment by such client" was excluded from taxation as an information service "personal or individual in nature," even though the information provided surely drew from public data (historical trading prices, debt/equity ratios and profits, for example).  Same too for the City regulation's other example of a "private detective agency which makes a special investigation at the request of another" – with no mention of any necessity that the report be based on nonpublic information.

This legislative history helps to resolve the meaning of Tax Law § 1105(c)(1) because it shows that the legislature, in its choice of "personal and individual," focused on the character of the information service (namely, the customized nature of information delivered by professional service providers), and not the nature of the information collected by the vendor. Dun & Bradstreet's volumes were taxable under the City law even though the information it provided was strictly confidential to its clients; investment counselor reports were not taxable even when they relied on public information.

Likewise, the legislative history demonstrates that the "may be or is not incorporated into reports furnished to others" language in the exclusion is not a separate requirement but an integral part of the more definite professional services exception, ensuring that true services—those where the information has been tailored to the personal or individual needs of the client—are exempt from taxation, but the kinds of services that are commoditized and are or can be provided outside the one-on-one bespoke client-professional relationship are captured by the taxing clause (Dun & Bradstreet services, or a newsletter produced by

a specialist law firm for a fee to a large client list supplying the same information to several of its clients).

The understanding of the "personal or individual" exclusion from legislative history also comports with a commonsense interpretation of the statute, once we understand that the "personal or individual" exclusion is meant to exclude from taxation, among other things, professional and consulting services. To use a familiar example to most readers of this opinion, consider the services of a law firm. A law firm is often called upon to provide legal advice to a client on some proposed course of action. The information given to the law firm about the course of action is, naturally, "personal or individual" to the client. But the information the law firm gives the client may not be—indeed, much of it will not be, as law firm advice is founded (or ought to be founded) on law, all of which is or should be accessible to the public (see generally Banks v Manchester, 128 US 244, 253 [1888] ["law . . . binding every citizen, is free for publication to all, whether it is a declaration of unwritten law, or an interpretation of a constitution or a statute"]).

Unless law firm billing for such legal advice must now be divided between hours spent conveying public information (taxable) and non-public information (non-taxable)— adding further anguish to those who toil in private practice—even the provision of public information must be exempt from taxation if the "furnishing of information" is "personal or individual in nature" and is not the kind of information service that involves the distribution  of information without "personal or individual" tailoring to clients (like, say, an annual client update on the activities of this Court, for which the provider charges a fee).

## III

Armed with that understanding of what the legislature meant by "personal or individual," I turn to the facts of this case. The service in question is a "Competitive Price Audit" ("CPA") produced by RetailData for Wegmans, a supermarket chain. The CPAs provide Wegmans with real-time pricing information for grocery products (specified by Wegmans) at certain competitor locations (specified by Wegmans), formatted into a report in a format specified by Wegmans. RetailData provided CPAs on demand; Wegmans would decide it needed data either on the prices of a particular item (e.g., a particular brand of canned tuna) being sold by competitors or prices on items generally (e.g., fancy albacore chunk light tuna in water, or simply canned tuna). Wegmans would then transmit a request for a CPA covering those items or categories of items, specifying dates, stores to check, and other parameters to RetailData. RetailData in turn would dispatch individual price checkers armed with smartphones or scanners to the relevant supermarkets to scan all the relevant prices during the specified dates, and then compile those prices into a report for Wegmans and Wegmans only. Although RetailData had multiple clients, if Wegmans and a second client each wanted to gather the same prices on the same items from the same store RetailData would dispatch two price checkers—one for each client—to gather the same data separately, furnishing to each client only the data gathered by the price checker assigned to that client.

The Tax Appeals Tribunal's decision on whether these CPAs were subject to sales tax analyzed these facts using an approach completely untethered from the statutory

language, when properly understood.[9] The Tribunal examined the nature of the *information* (i.e., was the information publicly available, which it viewed as incompatible with "personal or individual") rather than the nature of the *information services* (i.e., the delivery of a customized report) provided by RetailData: "the question to be answered to determine eligibility for the exclusion is whether the information in the report is uniquely personal . . . there is nothing 'uniquely personal' about the price of an item in a supermarket [and] such information is obviously not confidential, as it is accessible to anyone who enters a store" (In the Matter of the Petition of Wegmans Food Markets, Inc., DTA No. 825347, 2015 N.Y. Tax Lexis 372, 2016 WL 1109502 [NY Tax App Trib Mar. 10, 2016]).

The price of a can of tuna is "accessible to anyone who enters a store," but what the Tribunal never decided was whether a service that collected those prices for specific types of tuna (e.g., solid fancy albacore in water, 6 oz. can) of specific brands at specific stores on specific dates – with all specifications provided by a client – represented the kind of "furnishing of information" that was "personal or individual in nature and which is or may not be substantially incorporated in reports furnished to other persons." Likewise, the Tribunal rejected Wegmans' contention that RetailData's process of validating data

---

[9] Instead of attempting to discern the legislature's intent, the Tribunal relied on several Appellate Division decisions; those decisions contained no meaningful discussion or analysis of the information illuminating the legislature's understanding of "personal or individual," instead making guesses about what those words might have meant. By and large, those decisions misunderstood the statute as evincing an information-based, rather than service-based, exclusion (see, e.g., Hooper Holmes, Inc. v Wetzler, 152 AD2d 871, 872 [3d Dept 1989]; Towne-Oller & Assocs. v. State Tax Commn., 120 AD2d 873 [3d Dept 1986]; Rich Prods. Corp. v. Chu, 132 AD2d 175 [3d Dept. 1987]; Matter of Twin Coast Newspapers v State Tax Commn., 101 AD2d 977 [3d Dept 1984]).

rendered the service within the exclusion, claiming "the compilation of information . . . is insufficient to meet the personal or individual requirement" because that requirement could be met only if the relevant data had been "transformed": a focus on the nature of the data provided, rather than whether the information service was one provided on a customized basis, regardless of the source of the underlying information or contents of the report.

Indeed, whether RetailData created new information or found existing information in the world and transformed it does not bear on the ultimate inquiry of whether the furnishing of information was "personal or individual in nature" or of the kind that would be "substantially incorporated in reports furnished to other persons." If RetailData scanned a basket of prices each week and used that as a basis for a highly sophisticated and proprietary analysis of grocery market trends, but then sent that analysis to a large client list in exchange for a subscription fee, the information service would not be one that was "personal or individual in nature" because the data was susceptible to being, and was in fact, "substantially incorporated in reports furnished to other persons" beyond the "personal or individual" client—even though the data was transformed and incorporated into information generated by RetailData, regardless of whether the underlying data was readily available or transmitted to clients along with the analysis. Conversely, a business that collected raw data from a "common source . . . that is not confidential and is widely accessible" (Tribunal Decision, 2016 WL 1109502 at *11) but that was nonetheless created and validated only in response to a client's specific request is engaging in the "furnishing

of information which is personal or individual in nature," so long as that request does not result in a standardized product that is sold to others.

RetailData's CPAs, as a matter of "pure statutory interpretation and analysis," (Kurcsics, 49 NY2d 451, 459 [1980]) fell into the exclusion for information services that were "personal or individual in nature." Each CPA was tailored to Wegmans' precise requirements; the data generated was preserved solely for Wegmans' use and by its nature was not a standardized product that could be sold to others.

Because the Tribunal's determination was "inconsistent with the governing statute" (Trump-Equitable Fifth Ave. Co. v Gliedman, 57 NY2d 588, 597 [1982]), its determination "requires no deference and must be annulled" (Paramount Communications, Inc. v Gibraltar Cas. Co., 90 NY2d 507, 516 [1997]), even if, as the majority contends, one puts a thumb on the scale in favor of the government (majority op at 8) when construing an exclusion. However, because the majority's decision places such emphasis on abolishing the exclusions/exemptions distinction, I briefly note my agreement with Judge Stein's opinion on this point (although I differ with her view of the correct outcome on the merits of the case). I add to her analysis only one additional observation, the same point I made at the start: "The primary consideration of courts in interpreting a statute is to ascertain and give effect to the intention of the Legislature" (Riley, 95 NY2d at 455). I doubt our legislature intended to establish a rule, whether for exclusions or exemptions, that taxpayers should lose whenever the language of a tax statute is unclear. That seems particularly unlikely here, where the legislature sought to broaden an exclusion that had

been previously interpreted to benefit only narrow classes of professional service providers. Even if I am wrong, and you could show me a legislator who says, "when I write tax laws, I want the courts to construe ambiguities so that 'the taxpayer always loses'" (see Stein op at 1), I will show you a legislator who will be, very shortly, legislative history.

The legislature's meaning is not opaque if one uses the conventional tools of statutory interpretation entrusted to us. Employing them, it becomes clear that the legislature was not concerned with the public nature of the information gathered by an information service provider or whether that information was transformed in some manner, but rather whether the report delivered was custom—personal or individual for the client— or generic—sold or potentially sold to others.

Accordingly, I dissent.

*    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

Judgment reversed, with costs, determination of respondent Tax Appeals Tribunal of the State of New York confirmed and petition dismissed. Opinion by Judge Feinman. Chief Judge DiFiore and Judges Rivera and Garcia concur. Judge Stein concurs in result in an opinion. Judge Fahey dissents in an opinion. Judge Wilson dissents in a separate dissenting opinion.

Decided June 27, 2019